**Jason K. McCALLUM, Harry C. McCallum, and Annette Q. McCallum, Plaintiffs,**

v.

**CSX TRANSPORTATION, INC., USX Corporation, Midsouth Rail Corporation, North Pacific Lumber Co., Wiggins Lumber Company, U.S. Metalsource Corporation, and John Doe, Defendants.**

**No. 3:90CV00262.**

United States District Court, M.D. North Carolina, Rockingham Division.

May 4, 1993.

Vance Barron, Jr., David Erik Albright, Smith Helms Mulliss & Moore, Greensboro, NC, for USX Corp.

Walter E. Brock, Jr., David Paul Sousa, Young, Moore, Henderson & Alvis, P.A., Thomas J. White, III, White & Gaskins, Raleigh, NC, George H. Ritter, Wise Carter Child & Caraway, Jackson, MS, for Midsouth Rail Corp.

Gary K. Sue, Perry C. Henson, Henson Henson Bayliss & Sue, Greensboro, NC, for North Pacific Lumber Co.

David A. Senter, Betty Pincus Balcomb, Adams Kleemeier Hagan Hannah & Fouts, Greensboro, NC, for Wiggins Lumber Co.

Joseph T. Carruthers, III, Bell, Davis & Pitt, P.A., Winston–Salem, NC, for U.S. Metalsource Corp.

## *ORDER*

ELIASON, United States Magistrate Judge.

This matter comes before the Court on defendant CSX Transportation, Inc.'s ("CSX") motion for a protective order and sanctions against plaintiffs' out-of-state counsel. The motion arises from the alleged unethical conduct engaged in by plaintiffs' counsel during discovery in this action. Defendant CSX says that plaintiffs'. counsel and investigator made improper *ex parte* contacts with its employees after this lawsuit was filed. As a result, it seeks an order disqualifying plaintiffs' out-of-state attorney and law firm from further representation in this action, a protective order preventing plaintiffs from using at trial any statement given by a CSX employee, an order prohibiting further *ex parte* contacts by plaintiffs' counsel and/or their investigators, and an order granting CSX reasonable expenses and attorney's fees for bringing this motion.

A brief history will set the stage for further discussion. The complaint alleges negligence under state law and jurisdiction arises from 28 U.S.C. § 1332—diversity of citizenship. It is alleged that a minor plaintiff was struck by a steel band which was hanging from a CSX rail car as it passed over a trestle in Scotland County, North Carolina,

Louis C. Allen, III, Mark Edward Dreyer, Floyd, Allen and Jacobs, Greensboro, NC, Willard J. Moody, Jr., Robert A. Small, Moody, Strople & Kloeppel, Ltd., Portsmouth, VA, for plaintiffs.

John C. Millberg, Frank J. Gordon, Karon Bowling Thornton, Maupin Taylor Ellis & Adams, P.A., Raleigh, NC, for CSX Transp.

under which the boy was playing. The car was being transported by MidSouth Rail Corporation ("MidSouth"). Plaintiffs have alleged, among other things, that CSX, by and through its agents, servants and employees, was negligent in failing to inspect, maintain and operate the train properly and in failing to warn plaintiffs, to observe its own operating rules, and to eliminate the risk caused by dragging steel bands.

Returning to the motion, similar alleged misconduct has been previously before the Court in a motion filed by co-defendant Mid-South. In April of 1992, MidSouth filed a motion for a protective order and sanctions as a result of plaintiffs' out-of-state law firm, Moody, Strople & Kloeppel, Ltd. ("Moody"), having had contact with defendant Mid-South's employees after the institution of this lawsuit. On June 17, 1992, the Court held a hearing on that matter and announced its decision orally in open court with a minute entry being made on the docket. The Court found that the Moody firm, through its investigator, had violated the appropriate rules on professional conduct by interviewing some of the defendant's employees after this lawsuit was filed and after defendant MidSouth was represented by counsel. The Court further found that the investigator may have misled some of the employees concerning whom he represented, his role in the process, and the nature of the situation between the plaintiffs and the defendants by minimizing the fact that the investigator was trying to find evidence which would prove the interviewees' employer was negligent.

As a result of these findings, the Court, among other things, directed that (1) the investigator be removed and not further participate in the case, (2) plaintiffs were required to identify all interviewed employees and produce copies of all interview notes, (3) plaintiffs' counsel and investigators were forbidden to contact any other MidSouth employee except through counsel of defendant, and (4) the Court assessed reasonable attorney's fees against plaintiffs' law firm for defendant's having had to bring the motion. (Pleading 157)

On June 27, 1992, the Court rejected defendant MidSouth's further request that the Court impose more severe sanctions. It found that plaintiffs' counsel had not acted in bad faith. First, this is a multi-jurisdictional situation. The lawsuit was brought in North Carolina, the principal law firm is from Virginia, and the employees were interviewed in other states. A legitimate question arose as to whose code of conduct governed. Furthermore, once the matter became an issue, plaintiffs' counsel had been candid with the Court about his contacts and cooperative by ceasing further contacts and himself suggested some of the terms in the Court's subsequent remedial order. Consequently, defendant was unable to show any prejudice as a result of plaintiffs' counsel's actions. In addition, plaintiffs' counsel voluntarily gave defendant CSX the benefit of the Court's ruling even though defendant CSX declined to join in defendant MidSouth's motion, but rather decided to hold back its claim for sanctions until later.

Pursuant to the voluntary extension of the Court's Order to include CSX, plaintiffs' counsel disclosed all contacts between him or his investigator and CSX employees and the interview notes. From this, defendant CSX determined there were the following contacts. One of the persons interviewed was the brakeman on the train in question. He was interviewed both before and after the lawsuit was filed. A person from a train yard through which the train traveled was also interviewed after the lawsuit was filed. Three persons who rebanded the train car were interviewed. Also, two members of a train crew which immediately followed the train allegedly causing plaintiff's injury were interviewed prior to the lawsuit. The others are car inspectors or employees who were asked if they had seen the trains drag metal bands.

In all, thirteen rank and file employees were interviewed in March or April of 1992. All but three of these contacts took place after suit had been filed and plaintiffs' counsel knew that defendant CSX was represented by counsel. Defendant also emphasizes the improper behavior of plaintiffs' investigator with respect to MidSouth employees when he allegedly attempted to get the witnesses to talk by implying that plaintiffs

were not contending MidSouth did anything wrong and misrepresenting his identity and interests.

Defendant CSX contends that plaintiffs' counsel violated clear ethical rules by interviewing people who had a direct connection with the events of the accident. This includes the member of the train crew whose train car allegedly caused the accident and the employee at the train yard through which the train traveled, which was the last point wherein the train could have been inspected with respect to loose band problems.[1] Both made statements with respect to banding indicating that it was a problem and such testimony may be harmful to defendant CSX's case. CSX complains that the three people responsible for rebanding were also directly connected with the accident. Finally, defendant asserts that plaintiffs' interviews with the other employees were improper because such interviews could constitute admissions pursuant to Fed.R.Evid. 801(d)(2)(D) as being statements made by a party's agent or servant concerning a matter within the scope of the agency or employment.

Plaintiffs defend against the motion for a protective order and sanctions in two ways. First, they claim that these types of contacts with defendant's employees were necessary because defendant has failed to answer interrogatories requesting CSX to name employees who have knowledge about the breaking of metal bands on lumber loads or the dragging of metal bands by trains. Defendant CSX apparently has said that such questions are burdensome. Plaintiffs say the only way they can obtain the information is by interviewing defendant's employees, who would know if metal bands often dragged from the trains.

Next, plaintiffs argue that defendant's construction of the ethics rules is too broad. Plaintiffs argue that if defendant's viewpoint were upheld, a party could not interview any employee, except through formal discovery which would be prohibitively burdensome and expensive. Finally, plaintiffs contend there were few violations of any ethical rules

here and, in any event, CSX was not prejudiced. Because the rebanding took place after the accident, they object to defendant's attempt to categorize the rebanding employees as being off limits. With respect to Mr. Hancock, the brakeman, they note that he was not able to view the particular rail car in question so contact with him did not prejudice defendant CSX.

Plaintiffs also point out that they did proceed in good faith. Once this Court made its ruling with respect to MidSouth, they abided by that ruling with respect to any CSX employees interviewed. Plaintiffs have ceased interviewing and also have turned over all interview notes. For this reason, plaintiffs argue that defendant CSX's motion is essentially moot and should be denied.

Defendant CSX makes its motion for a protective order and sanctions pursuant to Fed.R.Civ.P. 11, 26(c) and 37. It also moves pursuant to Local Rule 122 for sanctions. The local rule provides for sanctions when an attorney or party fails to comply with a local rule of this Court. Finally, defendant requests the Court to invoke its inherent power.

■ When an attorney violates ethical standards, it is proper for the opposing party to file a motion to disqualify counsel or for sanctions. *In re American Airlines, Inc.,* 972 F.2d 605, 611 (5th Cir.1992); *Kitchen v. Aristech Chemical,* 769 F.Supp. 254, 256 (S.D.Ohio 1991). It is neither necessary nor in every instance desirable for a court to invoke the cumbersome and time-consuming provision of its own, formal disciplinary procedures or rely on those of the State Bar. *Id.;* and *Insituform of North America v. Midwest Pipeliners,* 139 F.R.D. 622, 624 (S.D.Ohio 1991). Ethical conflicts and problems arising during litigation are in most instances better handled by the court when the matter is fresh and before it. *Id.* However, reliance on Fed.R.Civ.P. 26(c) and 37 for the ethical violations in the instant case is not appropriate because those rules cover formal discovery procedures as opposed to the informal, *ex parte* interviews which oc-

1. As to the train yard worker, it is not clear what his job was and whether he was working on the day of the accident. Thus, the purported ethical violation is less than certain.

curred here. *Chancellor v. Boeing Co.*, 678 F.Supp. 250, 253 (D.Kan.1988); *Amarin Plastics, Inc. v. Maryland Cup Corp.*, 116 F.R.D. 36, 38 (D.Mass.1987). Rule 11 of the Federal Rules of Civil Procedure does not come into play inasmuch as the interviews did not involve the filing of a pleading or other paperwriting with the attorney's signature.[2] The Court possibly could utilize Local Rule 122 and sanction plaintiffs' counsel for disobeying this Court's Local Rule 505 which sets out the ethical standards to be used by attorneys practicing in this Court. However, the basis for the local rule on ethics itself derives from this Court's inherent power. Thus, it will be simpler to directly rely on that power in order to rule on defendant's motion.

■ The Supreme Court has made it clear beyond peradventure that a federal court's decision to admit to practice or discipline an attorney arises from an exercise of that court's inherent power. *In re Snyder*, 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 2881 n. 6, 86 L.Ed.2d 504, 513 n. 6 (1985). Furthermore, the standards which arise from exercise of that power must be found in federal law. *Id.; In re American Airlines, Inc.*, 972 F.2d at 610; *Kitchen v. Aristech Chemical*, 769 F.Supp. at 258. Inasmuch as neither Congress nor the Supreme Court have adopted a uniform set of federal ethical standards governing attorneys practicing in the federal courts, the various federal courts may look to the rules of the state in which that court sits or widely accepted national rules, such as the American Bar Association (ABA) Model Rules of Professional Conduct. If a district court has adopted disciplinary rules in its local rules, it naturally will consult them to determine the appropriate conduct. *See Polycast Technology Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 624 (S.D.N.Y.1990).

This Court has adopted a code of conduct in its local rules. Local Rule 505 utilizes the Code of Professional Responsibility promulgated by the Supreme Court of North Carolina. Notwithstanding, this Court must look to federal law in order to interpret and apply those rules. *In re American Airlines, Inc.*,

972 F.2d at 610. That is, even when a federal court utilizes state ethics rules, it cannot abdicate to the state's view of what constitutes professional conduct, even in diversity cases. *County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1407, 1414 (E.D.N.Y.1989), *aff'd and rev'd on other matters*, 907 F.2d 1295 (2d Cir.1990). Therefore, while this Court has adopted the North Carolina professional code as its code of conduct, it still must look to federal law for interpretation of those canons and in so doing may consult federal case law and other widely accepted national codes of conduct, such as the ABA Model Rules. *In re American Airlines, Inc.*, 972 F.2d at 610; *Kitchen v. Aristech Chemical*, 769 F.Supp. at 258; *Polycast Technology Corp. v. Uniroyal, Inc.*, 129 F.R.D. at 621–25. In addition, the Court may presume the attorney to be familiar with and bound by the ethical rules of the courts in which the attorney is admitted to practice. *In re Snyder*, 472 U.S. at 645 n. 6, 105 S.Ct. at 2881, n. 6, 86 L.Ed.2d at 513 n. 6; *University Patents, Inc. v. Kligman*, 737 F.Supp. 325, 329 (E.D.Pa.1990).

The Court first turns to the North Carolina Rules of Professional Conduct. The applicable standard is contained in Rule 7.4. That rule provides as follows:

**Rule 7.4 Communicating with One of Adverse Interest.**

During the course of his representation of a client a lawyer shall not:

(A) Communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

\*        \*        \*        \*        \*        \*

(C) In dealing on behalf of a client with a person who is not represented by counsel, state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make

---

2. To the extent defendant CSX seeks to recover attorney's fees under Rule 11 because of plaintiffs' counsel's opposition to its motion, the Court finds the request should be denied.

reasonable efforts to correct the misunderstanding.

The Comment to Rule 7.4 indicates that it is an amalgam of the former MODEL CODE OF PROFESSIONAL RESPONSIBILITY DR 8–104 and the MODEL RULES OF PROFESSIONAL CONDUCT Rules 4.2 and 4.3. It gives as further explanation:

> After a lawyer for a party has been notified that an adverse or potentially adverse organization is represented by counsel in a particular matter, this rule would prohibit communications by the lawyer concerning the matter with persons having managerial responsibility on behalf of the organization, and with any other employee whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Two ethics opinions touch on this subject. In a 1989 Ethics Opinion, RPC (Rules of Professional Conduct) 81, the North Carolina State Bar indicated that a lawyer could interview unrepresented former employees of an adverse corporate party without the permission of the corporate lawyer. The opinion explains that the rationale behind Rule 7.4 is to protect persons of the corporation who have "the legal power to bind the corporation or are responsible for implementing the advice of the corporation's lawyer." This is said to be necessary in order to "prevent improvident settlements and similarly major capitulations of legal position on the part of a momentarily uncounseled, but represented, party." However, "[t]he rule is not meant to protect a corporation whose interests might be impaired by factual information *willingly shared* by a former employee." (emphasis added) In an earlier opinion, RPC 67, the state bar held that rank and file employees whose personal acts or admissions were not at issue may ordinarily be interviewed without the knowledge or consent of the corporate party or its counsel. But, employees who have managerial responsibility or who have been authorized to speak for the corporation may not be so interviewed.

■ In reviewing the North Carolina rule, the Court finds that it is consonant with the ABA Model Rule 4.2.[3] Thus, it prohibits *ex parte* contacts between an attorney and the present employees of a represented corporation (1) who have managerial responsibility, (2) whose actions or admissions with respect to the disputed matter may be imputed to the organization for purposes of civil or criminal liability, or (3) whose statement might constitute an admission on the part of the organization. In this, the North Carolina rule is consistent with the ethical duty for employee interviews as determined by other federal courts looking to similar state or national ethics rules used in their districts. *See University Patents, Inc. v. Kligman,* 737 F.Supp. 325; *Cagguila v. Wyeth Laboratories, Inc.,* 127 F.R.D. 653 (E.D.Pa.1989); *Chancellor v. Boeing Co.,* 678 F.Supp. 250; *Amarin Plastics, Inc. v. Maryland Cup Corp.,* 116 F.R.D. 36. *But see Porter v. Arco Metals, Div. of Atlantic Richfield,* 642 F.Supp. 1116 (D.Mont.1986), distinguished by *Morrison v. Brandeis University,* 125 F.R.D. 14, 17 (D.Mass.1989). The Court adopts this widely accepted interpretation.

Some state courts have recently limited the reach of the ethical prohibition to the first two categories, *i.e.* management and imputed acts. *Strawser v. Exxon Company,* 843 P.2d 613, 621 (Wyo.1992); *State v. CIBA–GEIGY Corporation,* 247 N.J.Super. 314, 589 A.2d 180 (1991). They would distinguish the third category of "admissions" as being a concern of evidentiary rules as opposed to being a reason for a rule of professional conduct, adding that the latter does not have a purpose of protecting a corporate party from prejudicial facts. *Id.; Strawser* at 621. However, the persuasiveness of those cases for federal courts is diminished because they rely on *Niesig v. Team I,* 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d

---

**3.** ABA Model Rule 4.2 provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter,

unless the lawyer has the consent of the other lawyer or is authorized by law to do so.
*University Patents, Inc. v. Kligman,* 737 F.Supp. 325, 327 (E.D.Pa.1990).

1030 (1990). That court expressly declined to include in its ethical prohibitions the third category of employees who could make admissions because New York had no state counterpart to Fed.R.Evid. 801(d)(2)(D) whereby a rank and file employee's statement could be deemed an admission of the employer. The situation is exactly to the contrary in federal court.

Next, ethical rules do have the purpose of preventing counsel from overreaching and exploiting uncounseled employees into making ill-considered statements or admissions. *Polycast Technology Corp. v. Uniroyal, Inc.*, 129 F.R.D. at 625. The concern is not that an opposing party may contact employees and obtain facts harmful to the employer. Rather, it is, for example, the use of investigators to obtain admissions legally binding on the employer as part of a planned scheme to obtain evidence to support one's case. In that instance, there may be a temptation to aggressively pressure employees into making "favorable" hearsay admissions or hearing, in an employee's words, such admissions. It is not unreasonable to conclude that such contacts present too great a threat to the integrity of the legal system and reputation of the bar to be permitted during the course of litigation, without oversight from the Court. It may be noted that nothing in this Court's interpretation of the ethical rule prevents a party from interviewing rank and file employees who merely witnessed an event, even though they relate facts prejudicial to their employer.

The one drawback to this Court's interpretation lies in the restriction it places on a party's ability to conduct low cost, informal discovery. *In re Environmental Insurance Declaratory Judgment Actions*, 252 N.J.Super. 510, 600 A.2d 165, 171 (1991). The problem arises because under the liberalized provisions of Fed.R.Evid. 801(d)(2)(D), an employee's statement can be used against the employer as an admission so long as it is made during the existence of the relationship and concerns a matter within his agency or employment. *See* 12 Michael H. Graham, *Federal Practice and Procedure* § 6722 (Interim Ed.1992). Thus, virtually every employee may conceivably make admissions binding on his or her employer. Because any employee might bind the corporation pursuant to Fed.R.Evid. 801(d)(2)(D), it would seem fair that the employer's attorney ought to be present at any interview where an admission is made. On the other hand, it may be difficult to determine which employees fit into that category prior to an interview. To act cautiously may mean that no employee could be interviewed without opposing counsel's consent or a court order. Such a result could seriously jeopardize those cases where plaintiff had a critical need to be able to inexpensively conduct informal discovery. *Id.; Morrison v. Brandeis University*, 125 F.R.D. at 18–19; *see also Mompoint v. Lotus Development Corp.*, 110 F.R.D. 414, 418–19 (D.Mass.1986).

The apparent tension between the ethics of contacting an opponent's employees, the need for informal discovery, and the dangers of Rule 801(d)(2)(D), does not present an insurmountable barrier in ascertaining an appropriate code of conduct. First, one can request permission from the company's attorney or seek permission from the court.[4] In both *Morrison* and *Mompoint,* the court faced a situation wherein the parties requested leave of court to interview the employees. That situation must be distinguished from the instant one wherein the Court has not been consulted, there has been a unilateral decision to make *ex parte* contact, and a party is moving for disqualification and sanctions. *See University Patents, Inc. v. Kligman,* 737 F.Supp. at 328. The attorney who seeks court approval before contact does not risk an ethical violation, but one who does not acts at his or her own peril.[5]

---

4. In an unsettled situation, a party has an ethical duty to seek the court's guidance as opposed to acting on its own. *Cagguila v. Wyeth Laboratories, Inc.,* 127 F.R.D. 653, 654 (E.D.Pa.1989).

5. Magistrate Judge Collins, who authored both *Morrison v. Brandeis University,* 125 F.R.D. 14 (D.Mass.1989), and *Mompoint v. Lotus Develop-*

*ment Corp.,* 110 F.R.D. 414 (D.Mass.1986), agreed that it would not be appropriate for counsel to unilaterally decide whether or not to interview a corporate party's employees without providing notice to the corporation's attorney. *Morrison,* 125 F.R.D. at 18 n. 1. That situation differs from the one before this Court wherein a party has taken unilateral action and, therefore,

■ Second, the sweep of Rule 801 is not as threatening as it may seem at first blush. It is true that the Federal Rules of Evidence and similar state rules now eliminate the need for the employee to have authority to speak before the employee's statements can constitute an admission by the employer. 12 Graham, *supra*, at 505. However, the statement still must be within the scope of the agency or employment of the employee. *Id.* at 508. Employees do not come under Fed. R.Evid. 801(d)(2)(D) unless their job function has something to do with the issue at hand. Thus, employee comments on employment decisions will not bind the organization if the individual had nothing to do with the decision. *Id.* at 508. *See* 4 Jack B. Weinstein and Margaret A. Berger, *Weinstein's Evidence* ¶ 801(d)(2)(D)[01] (Cum.Supp. March 1993) (citing *Precision Piping v. E.I. du Pont de Nemours,* 951 F.2d 613 (4th Cir. 1991)). However, even lower grade employees can bind the employer if the employee is used for a certain function and the employee admits to matters concerning that function. 4 Weinstein and Berger, *supra* (citing *Rainbow Travel Service v. Hilton Hotels Corp.,* 896 F.2d 1233, 1242 (10th Cir.1990) (driver)). *See also Precision Piping v. E.I. du Pont de Nemours,* 951 F.2d at 620 (secretary relaying messages).

■ Turning to the concerns of the instant case, if the employee is somehow involved in a matter which is the subject of dispute between the parties, the employee's statements may constitute an employer admission and an attorney should not interview the employee without permission. This may even include employees who have not been directly involved in the decision, but are involved in similar decisions. For example, if a truck driver is involved in the accident, he can bind the employer by making statements about his driving actions or instructions given him. 12 Graham, *supra*. He should not be contacted without the corporation's counsel being present. The same rule would apply, for example, to the driver's training instructor, if that were an issue in the case.

■ On the other hand, some employees may have witnessed the accident. Those who merely observed may be interviewed as to those matters without constituting employer admissions. *Polycast Technology Corp. v. Uniroyal, Inc.,* 129 F.R.D. at 628; *Frey v. Department of Health and Human Services,* 106 F.R.D. 32, 37 n. 2 (E.D.N.Y.1985). Their statements would be important fact information, but would not be employer admissions. In conclusion, the ethical rule concerning contact with an opponent's employees during litigation imposes burdens and requires counsel to proceed with extreme caution if *ex parte* interviews are attempted. But it does not stretch too far by covering employees who make Fed.R.Evid. 801(d)(2)(D) admissions.

Defendant CSX argues that this Court's interpretation does not sweep broadly enough. It says that contact with any of its employees is improper. That proposition stretches the ethical prohibition too far. CSX relies on *Cagguila v. Wyeth Laboratories, Inc.,* 127 F.R.D. 653. That court decided that an employee should not be contacted, even if that employee neither has management responsibility nor committed an act which could be imputed to the organization.

In *Cagguila*, an employee was interviewed *ex parte* concerning employment practices at the company. Plaintiff's counsel intended to use that statement as evidence of disparate treatment. The court prohibited the plaintiff's attorney from using the statement at trial, but not from deposing the employee or calling him to testify at trial. It did not disqualify counsel or impose monetary sanctions. And, most importantly, the court did not decide whether the statement constituted a Rule 801(d)(2)(D) admission. Thus, the case can be read as adopting the limited but salutary rule that whenever *ex parte* contact is made with the opponent's employee, the court will deny a party the benefit of any possible overreaching by counsel. With this procedure, unless a serious violation is shown, the Court need not decide whether an ethical violation took place. It will simply

this Court cannot adopt the case-by-case approach of Judge Collins but must determine

whether past actions merit sanctions.

disallow the use of any Fed.R.Evid. 801(d)(2)(D) admissions thereby obtained. This Court will adopt that practice to bar use of any employer admissions from the *ex parte* interview of employees during the litigation in the instant case.

Finally, the Court addresses the scope of its ethical rules. This Court may apply its ethical code of conduct to out-of-state attorneys who practice before this Court and can sanction conduct which takes place in other states. By choosing to litigate in this Court, counsel submit to this Court's federal law interpretation of ethical canons wherever the conduct takes place. Plaintiffs' counsel has not shown that the interpretation set out today is in direct contradiction of any *duty* imposed by the state where he was admitted to practice or where the conduct occurred. Even if those states permitted the conduct at issue, that does not give an attorney permission to operate in contravention of the ethical duties as determined by this Court. If there is a disparity between ethical obligations of different states, counsel's only choice is to follow the more expansive duty or seek guidance from the Court.

Turning to the facts of the instant case, plaintiffs' attorney visited with the brakeman on the very train which allegedly caused the accident. Certainly the brakeman's acts or admissions may be directly involved with respect to this lawsuit and he should not have been contacted. The person who was at the Hamlet rail yard also could possibly be implicated somehow in the causation process and should not have been contacted if he was a car inspector at work on that day. It is less clear that the employees who rebanded the rail car should have been contacted. However, since they did the rebanding and that could be deemed the concluding part of proof of the causation process, they should not have been contacted, even if contacted after the lawsuit. It is not clear why individuals who were on a subsequent train could not have been contacted even after the lawsuit. Defendant CSX does not show how their statements would be binding on it as admissions.

The car inspectors should not have been contacted because their job was to look for loose bands and their statements that there was a loose band problem will be binding on defendant CSX. Finally, a number of employees were contacted concerning their observation of steel bands on the trains and trestle. Defendant has not shown that these individuals made comments about matters which were within the scope of their agency or employment. Rather, it would appear that these were merely observations made by employees. Defendant CSX fails to show why contact with these employees was improper.

■ Although not all of plaintiffs' contacts with defendant's employees were improper, even in those instances, there are problems with the contact. When contact is made, certain precautions need to be observed. The ABA Model Rule 4.3 imposes an obligation on an attorney to convey to the unrepresented witness the truth about the lawyer's role, representative capacity, and that he is not disinterested. *In re Environmental Insurance Declaratory Judgment Actions,* 600 A.2d at 170–171. And as North Carolina Ethics Opinion RPC 81 notes, the employee must be *willing* to be interviewed. Consequently, prior to the interview, the attorney or investigator must (1) fully disclose their representative capacity to the employee, (2) state the reason for seeking the interview as it concerns the attorney's client and the employer, (3) inform the individual of his or her right to refuse to be interviewed, (4) inform the person that he or she has the right to have their own counsel present, and finally (5) may not under any circumstances seek to obtain attorney-client or work product information from the employee. *University Patents, Inc. v. Kligman,* 737 F.Supp. at 328; *Valassis v. Samelson,* 143 F.R.D. 118, 124–25 (E.D.Mich.1992) (confidential communications); *Amarin Plastics, Inc. v. Maryland Cup Corp.,* 116 F.R.D. at 42 (confidential communications); *Frey v. Department of Health and Human Services,* 106 F.R.D. at 38 (confidential communications). Some courts have required a set script to be read to and signed by the employee. *In re Environmental Insurance Declaratory Judgment Actions,* 252 N.J.Super. 510, 600 A.2d 165;

*Monsanto Company v. Aetna Casualty and Surety Company*, 593 A.2d 1013 (Del.1990).

In the instant case, the Court finds that plaintiffs' investigator not only failed to take these precautions but violated them in some instances (at least with MidSouth) by not fully disclosing his representative capacity and the true nature of the interview, and by not informing the employees of their right to refuse to be interviewed and to have their counsel present. It is not clear that this occurred with all of the employees. However, further exploration of this matter is not needed. The Court declines to impose any sanctions other than that which have already been imposed with respect to the similar violations with regard to MidSouth employees.

■ Disqualification of a party's counsel is a drastic measure. Motions for such relief have been viewed with suspicion because they can as well be used for delay or harassment. *In re American Airlines, Inc.*, 972 F.2d at 611, *Kitchen v. Aristech Chemical*, 769 F.Supp. at 257. Not every violation of ethical rules will call for disqualification. The right to be represented by counsel of one's own choosing is an important value to be preserved. Thus, disqualification should be invoked only when the violation has risen to a level so as to implicate the public interest in the fair administration of justice and seriously undermine public confidence in the bar. *Kitchen v. Aristech Chemical*, 769 F.Supp. at 257; *Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F.Supp. 651 (M.D.Fla.1992) (payments for confidential information). *See generally In re American Airlines, Inc.*, 972 F.2d 605. The nature and extent of prejudice suffered or likely to be suffered in the future by the other parties is also a relevant consideration. While the sports based aphorism "No harm; No foul" cannot be wholly transplanted to matters involving ethical violations, the extent of harm cannot be ignored. A finding of little or no prejudice may indicate lack of intent while a finding of great prejudice may not only show intent but itself call for a remedy.

In the instant case, the ethical violations were relatively minor, inasmuch as not all contacts were improper and defendants did not suffer any harm. Defendant CSX has not shown anything different than what was presented to the Court with respect to the MidSouth situation. The Court was and is able to employ the lesser sanctions of divulging the contacts, prohibiting their use as admissions and imposing a monetary sanction in the form of attorney's fees. In this circumstance, the Court does not deem the disqualification sanction to be necessary to vindicate the public interest in preventing overreaching by counsel or to restore public confidence. It is noted that other courts have been equally reluctant to invoke disqualification in somewhat similar situations. *Cagguila v. Wyeth Laboratories, Inc.*, 127 F.R.D. 653; *University Patents, Inc. v. Kligman*, 737 F.Supp. 325. The Court sees no further need for monetary sanctions because defendant CSX is merely covering ground previously traveled. The Court will prohibit plaintiffs from using any *ex parte* statement obtained from MidSouth's or CSX's employees as a Fed.R.Evid. 801(d)(2)(D) admission against defendants.

IT IS THEREFORE ORDERED that defendant CSX Transportation, Inc.'s motion for a protective order disqualifying plaintiffs' out-of-state law firm as counsel and for reasonable expenses and attorney's fees is denied, but that portion of the motion seeking a protective order prohibiting any further *ex parte* contacts by plaintiffs' counsel with defendant CSX employees without permission from the Court and prohibiting the use at trial of any statements given by CSX employees to plaintiffs' counsel or their investigators, or testimony about such statements, be, and the same hereby is, granted, and the same relief is *sua sponte* extended to defendant MidSouth. However, these employees may be deposed and called as witnesses.