Nathaniel TUCKER, Plaintiff,

v.

**NORFOLK & WESTERN RAILWAY COMPANY, Defendant.**

Civ. A. No. 3:93cv841.

United States District Court,
E.D. Virginia,
Richmond Division.

April 21, 1994.

Francis Paul Hajek, Wilson & Hajek, Virginia Beach, VA, for plaintiff.

Francis A. Cherry, Jr., Randolph, Boyd, Cherry & Vaughan, Richmond, VA, for defendant.

PAYNE, District Judge.

## MEMORANDUM OPINION AND ORDER

Nathaniel Tucker seeks damages under the Federal Employers Liability Act ("FELA"), 45 U.S.C. §§ 51–60, for injuries he allegedly sustained while employed as a welder by Norfolk & Western Railway Company ("N & W") at or near Disputanta, Virginia, on March 16, 1993. This matter is presently before the court on N & W's motion in limine which asks the court to prohibit Tucker's counsel from engaging in *ex parte* communication concerning the subject matter of his case with any of N & W's current employees.

At a hearing on March 14, 1994, the following facts were established: (1) before filing this action, Tucker's counsel or counsel's representative interviewed *ex parte* a number of N & W's employees about the incident; (2) Tucker's counsel now desires to interview *ex parte* additional employees of N & W about the incident; and (3) Tucker's counsel also desires to re-interview *ex parte* one or more of those employees interviewed before the filing of this action in order to clarify their statements and "possibly to ask them" additional questions.

## DISCUSSION

1. *The Governing Ethical Rule*

Under Virginia Code of Professional Responsibility Disciplinary Rule 7–103(A) (1993): [1]

---

1. This Court, in Local Rule 7(I), has adopted the ethical standards contained in the Virginia Code of Professional Responsibility.

During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.[2]

■ As an initial matter, both parties in this action agree that DR 7–103(A)(1) only prohibits a lawyer from engaging in *ex parte* communication with a party after a lawsuit is filed. Therefore, those communications between Tucker's counsel and N & W's employees which occurred before the filing of this action are not prohibited, or even governed, by DR 7–103(A).

■ In addition, both parties agree that DR 7–103(A)(1) only restricts the actions of a lawyer and those persons, such as detectives or investigators, whom the lawyer "cause[s] ... to communicate" with an opposing party. Therefore, the Rule does not prohibit, even after the commencement of an action, a party from interviewing those individuals with whom the lawyer cannot communicate under DR 7–103(A). With these initial matters resolved, the court now turns to the two remaining issues presented by this motion: (1) whether Tucker's counsel should be prohibited from engaging in *ex parte* communication with N & W's current employees now that the action has commenced, and (2) whether Tucker's counsel should be prohibited from re-interviewing *ex parte* those current N & W employees whom he interviewed before filing this action.

## 2. *Ex Parte Communication With Corporate Employees: The Ethical Dilemma*

■ As noted above, Virginia Code of Professional Responsibility Disciplinary Rule 7–103(A) prohibits a lawyer from engaging in unauthorized *ex parte* communication with a represented party. When one of the parties is a corporation, the ABA Committee on Ethics and Professional Responsibility has determined that this rule prohibits *ex parte* communication with

persons having a managerial responsibility on behalf of the organization, and ... any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

ABA Comm. on Ethics and Professional Responsibility, Formal Op. 359 (1991) (quoting comment accompanying Model Rules of Professional Conduct Rule 4.2, a rule which is "substantially identical" to Model DR 7–104(A)(1) and Virginia DR 7–103(A)(1)). Thus, it is first necessary to determine whether N & W's employees are individuals "whose statement[s] may constitute an admission on behalf of the organization."

Under Rule 801(d)(2)(D) of the Federal Rules of Evidence, an employee's statement can be used against his employer as an admission if the statement "concerns a matter within the scope of the agency or employment" and was "made during the existence of the [employment] relationship." Fed.R.Evid. 801(d)(2)(D); *see also Precision Piping & Instruments, Inc. v. E.I. du Pont de Nemours & Co.*, 951 F.2d 613, 618 (4th Cir.1991); *McCallum v. CSX Transp., Inc.*, 149 F.R.D. 104, 109 (M.D.N.C.1993). Hence, under a liberal reading of F.R.E. 801(d)(2)(D), as long as the statement concerns a matter within the scope of the employee's agency or employment, "virtually any employee may conceivably make admissions binding on his or her employer." *McCallum*, 149 F.R.D. at 110. This presents a dilemma for lawyers who desire to engage in cost-effective, informal discovery. As the district court noted in *McCallum*:

Because any employee may bind the corporation pursuant to Fed.R.Evid. 801(d)(2)(D), it would seem fair that the employer's attorney ought to be present at any interview where an admission is made. On the other hand, it may be difficult to determine which employees fit into that category prior to an interview. To act cautiously may mean that no employee could be interviewed without an opposing

---

**2.** This language is identical to that of Model Code of Professional Responsibility DR 7–104(A)(1).

counsel's consent or a court order. Such a result could seriously jeopardize those cases where plaintiff has a critical need to be able to inexpensively conduct informal discovery ...

*Id.* However, as noted by the thoughtful unpublished opinion in *Queensberry v. Norfolk and Western Railway, Comp.,* No. 3:93cv00163 (E.D.Va.1993), the apparent quandary created by the need for inexpensive, informal discovery, the ethical restrictions on contacting an opponent's employees, and the broad scope of admissions under F.R.E. 801(d)(2)(D), does not "present an insurmountable barrier to ascertaining an appropriate code of conduct." *Queensberry,* p. 3. There, Judge Spencer subscribed to the decision in *McCallum,* wherein the district court explained:

> ... First, one can request permission from the company's attorney or seek permission from the Court.... The attorney who seeks court approval before contact does not risk an ethical violation, but one who does not acts at his or her own peril....
>
> Second, the sweep of Rule 801 is not as threatening as it may seem at first blush. It is true that the Federal Rules of Evidence ... now eliminate the need for the employee to have authority to speak before the employee's statements can constitute an admission by the employer.... However, the statement still must be within the scope of the agency or employment of the employee.... Employees do not come under Fed.R.Evid. 801(d)(2)(D) unless their job function has something to do with the issue at hand....

149 F.R.D. at 110–11.

In this action, Tucker alleges that he was injured while manually transporting machinery at a welding site. Among Tucker's theories of negligence is that the machinery he was given by his supervisor to use on the welding job was not safe because one of the pieces was not equipped with a cradle which, at the employee's option, could be used in connection with a hoist to mechanically lift or lower the machine off of and on to the truck. In order to establish this theory, Tucker's counsel desires to conduct *ex parte* interviews with other N & W welding crew employees who would have knowledge respecting the existence or status of the cradle on Tucker's machinery and the extent to which cradles are available for use by employees whose jobs are similar to Tucker's. It is readily apparent that these employees could only have acquired such knowledge in the scope of their employment and that, therefore, their statements might, upon establishment of a sufficient foundation by plaintiff, be admissible under F.R.E. 801(d)(2)(D) as admissions by a party-opponent. *See Queensberry,* at 4; *Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560, 1567 n. 12 (11th Cir.1991) (steward's statement regarding condition of sliding glass door would have been admissible had plaintiff established that steward "legitimately acquired knowledge of the defective door in the course and scope of his employment"). Accordingly, *ex parte* communications with N & W's employees about those subjects are barred by Virginia DR 7–103(A), absent prior consent of defendant's counsel, unless such communications are otherwise authorized by law. *Queensberry,* at 4.

### 3. *Is Ex Parte Communication With Railroad Employees "Otherwise Authorized By Law?"*

█ Tucker argues that *ex parte* communications with N & W's employees are "otherwise authorized by law" under the provisions of FELA. Specifically, Tucker relies upon 45 U.S.C. § 60, which states in pertinent part:

> Any contract, rule, regulation, or device whatsoever, the purpose, intent or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void, and whoever, by threat, intimidation, order, rule, contract, regulation, or device whatsoever shall attempt to prevent any person from furnishing voluntarily such information to a person in interest, or whoever discharges or otherwise disciplines or attempts to discipline any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction thereof, be

punished by a fine of not more than $1,000 or imprisoned for not more than one year, or by both such fine and imprisonment, for each offense: Provided, that nothing herein contained shall be construed to void any contract, rule, or regulation with respect to any information contained in the files of the carrier, or other privileged or confidential reports.

Under this statute, a lawyer retained by an injured railroad worker for the purpose of pursuing a FELA claim is a "person in interest" to whom accident information properly may be passed. *Queensberry,* at 5. *See also Sheet Metal Workers Int'l Ass'n v. Burlington N.R.R.,* 736 F.2d 1250, 1252 (8th Cir. 1984).

■ In enacting 45 U.S.C. § 60, the intent of Congress was

to attempt to equalize the access to information available to the highly efficient claim departments of the railroad and to the individual F.E.L.A. claimants, and to prohibit the promulgation and enforcement of rules which would inhibit the free flow of information to claimants. *See* Senate Report No. 661, 76 6th Cong., 1st Sess. 25 (1939). Its authors recognized the danger 'that railroad agents would coerce or intimidate employees to prevent them from testifying.' The broad prohibition, 'by threat,

intimidation, order, rule, contract, regulation or device' indicates that section 60 was designed to prevent any direct or indirect chill on the availability of information to any party in interest in a F.E.L.A. claim. Therefore, the Act is to be read liberally.

*Cavanaugh v. Western Md. Ry.,* 729 F.2d 289, 293 (4th Cir.1984) (quoting *Stark v. Burlington Northern, Inc.,* 538 F.Supp. 1061, 1062 (D.C.Col.1982)).[3] The issue presented by the facts and this motion is the proper interplay between 45 U.S.C. § 60 and the Virginia state ethical rule forbidding *ex parte* communication with employees of an adverse party.

In *Queensberry,* Judge Spencer addressed that issue. There, the court determined that "absent consent of the defendant railroad's counsel, the desired information must be accessed through normal discovery methods, such as depositions or other statements taken in the presence of defendant's counsel." *Queensberry,* at 7–8.[4] In reaching this result, *Queensberry* quoted with favor *Garrett v. National Railroad Passenger Corp.,* Civ.A. No. 89–8326, 1990 WL 122911, 1990 U.S.Dist.LEXIS 10,868 (E.D.Pa. Aug. 14, 1990), where the district court considered the same issue in the context of a Pennsylvania ethics rule[5] which is substantially similar to

---

**3.** The legislative history behind 45 U.S.C. § 60 is also helpful. Consider S.Rep. No. 661, 76th Cong., 1st Sess. 5 (1939), which states:

The railroads maintain well-organized and highly efficient claim departments. When an employee is injured, the claim agent promptly endeavors to procure statements from all witnesses to the infliction of the injury, takes photographs, measurements, and obtains all available information considered necessary to protect the railroad company against a possible suit for damages.

On the other hand, the claimant may be seriously handicapped in his attempt to procure the information necessary to the determination of the question of liability. For example, a substantial number of the railroads subject to the [Federal] Employer's Liability Act have promulgated rules which prohibit employees from giving information concerning an accident to anyone excepting certain specified company officials and claim agents.

The purpose of the amendment under consideration [to add the language now codified at 45 U.S.C. § 60] is to prohibit the enforcement of such rules and permit those who have information concerning the facts and circumstances

of a personal injury to give statements to the injured employee or his dependents, or to someone authorized to represent him or them.

In relation to the investigation of facts upon which claims for injuries are based, humanity and justice demand the injured railroad men be accorded as much freedom of action as their employers enjoy.

**4.** In reaching this holding, the court in *Queensberry* made clear that "the defendant railroad may not, of course, act unreasonably in dealing with plaintiff's requests to schedule such depositions or interviews. Any unreasonable conduct would, in effect, constitute a denial of consent." p. 8, fn. 4.

**5.** Rule 4.2 of the Rules of Professional Conduct adopted by the Pennsylvania Supreme Court, which states:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Virginia's DR 7–103(A)(1). In holding that 45 U.S.C. § 60 does not authorize *ex parte* communications which violate the disciplinary rule, *Garrett* explains:

> While this section prevents the railroad from hindering or preventing any employee "from furnishing voluntarily information to a person in interest" regarding the facts of an accident, it does not authorize plaintiff's counsel to communicate with an employee *ex parte* in violation of [the disciplinary rule] once litigation has begun. Section 60 only prohibits the railroad from, through a policy or practice of intimidation or otherwise, barring employees from furnishing information regarding the facts of an accident voluntarily.

*Garrett*, 1990 WL 122911, at \*2, 1990 U.S.Dist.LEXIS 10,868, at \*6–\*7. Based on this language, and its reading of the relevant statute and rules, the court in *Queensberry* then held that although under 45 U.S.C. § 60 a railroad

> may not lawfully withhold consent to interviews of its employees by a FELA plaintiff or his counsel ... to state that a railroad must consent to such interviews, however, is not to say that such interviews may be conducted *ex parte* in violation of state ethics rules. Instead, such interviews are subject· to the same ethical restrictions that are encountered by counsel for parties in all other cases involving a corporate defendant or plaintiff. Absent consent of the defendant railroad's counsel, the desired information must be accessed through normal discovery methods ...

*Queensberry*, p. 7–8.

This court agrees with both the rationale and result in *Queensberry*, and therefore finds that in regard to Tucker's desire to interview additional current railroad employees, N & W's motion in limine will be granted. Tucker's counsel may interview those employees under the terms outlined in *Queensberry*.

Tucker correctly notes in his brief that 45 U.S.C. § 60 prohibits "any contract, rule, regulation, or device whatsoever" which has the effect of preventing railroad employees from voluntarily furnishing information. However, as the decision in *Queensberry* makes clear, there is no basis for the assumption that the mere presence of N & W's counsel at interviews would have the effect of preventing employees from furnishing complete information. *Queensberry*, at 8. This is not to say, however, that a plaintiff could never make a showing sufficient to support a finding that the presence of a railroad's lawyer in fact would create a "direct or indirect chill on the availability of information," *Cavanaugh, supra*. In that event, 45 U.S.C. § 60 would require a different result.[6]

■ Finally, Tucker's counsel requests authority to re-interview *ex parte* one or more of those employees whom he interviewed before filing this action in order to clarify the statements they made then and to ask them additional questions. The court's understanding of *Queensberry, Garrett* and DR 7–103(A)(1) is that once litigation has begun, the disciplinary rule prohibits Tucker's counsel from eliciting information from an N & W employee *ex parte*. Therefore, the request to re-interview employees in order to ask them additional questions is denied. However, the court recognizes that the realities of litigation and professional obligations require an attorney to have access to possible witnesses and to meet with them before trial. Therefore, although Tucker's counsel may elicit no new information *ex parte*, he will be permitted to meet with those employees interviewed before this action was filed for the limited purpose of clarifying their prior statements and ascertaining their accuracy. This decision will work no hardship on the defendant because, if the employees are listed as witnesses by Tucker, N & W's counsel will be able to identify the employees well before trial and interview them, and thereby con-

---

**6.** At the hearing on this matter, Tucker's counsel tendered an affidavit from a union official which,· in conclusory terms, stated that there had been instances of intimidation at N & W. The affidavit was not based on personal knowledge of the affiant, and the alleged intimidation was ex- pressed in vague, general terms. Hence, the affidavit would not have been probative of instances of actual intimidation even if it had been admitted by the court (which it was not), or timely filed (which it was not).

firm that Tucker's counsel has complied with the limitations of this order.

### CONCLUSION

For the reasons stated above, N & W's Motion in Limine will be granted, subject to the condition that N & W may not withhold its consent to depositions or other non-*ex parte* interviews with its employees, and subject to the condition that Tucker's counsel may re-interview those employees interviewed before filing this action for the limited purpose of clarifying their previous statements.

It is so ORDERED.