**Blaine LEWIS, Plaintiff,**

v.

**CSX TRANSPORTATION, INC., Defendant.**

**No. CIV. A. 2:00CV00143.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

May 7, 2001.

Terry Gene Kilgore, Gate City, VA, Joseph Aaron Miller, Norfolk, VA, for plaintiff.

Kevin Wayne Mottley, Troutman Sanders Mays & Valentine, LLP, Richmond, VA, Charles Stephen Setliff, Mays & Valentine, Richmond, VA, Gregory Franklin Holland, Troutman Sanders Mays & Valentine, LLP, Richmond, VA, for defendant.

## MEMORANDUM OPINION

SARGENT, United States Magistrate Judge.

This matter is before the court on the defendant's Motion To Enjoin Ex Parte Contact, (Docket Item No. 10) ("the Motion"). A hearing was held before the undersigned on this and other pending motions on May 1, 2001. Based on the reasoning set out below, the Motion will be granted.

### I. Factual Background

The plaintiff, Blaine Lewis, ("Lewis"), filed this action seeking damages from his employer, CSX Transportation, Inc., ("CSX"), for alleged injuries under the Federal Employer's Liability Act, ("FELA"), 45 U.S.C. § 51 *et seq.* Lewis, a CSX employee, claims that he was injured on August 17, 1998, when he fell off of the rear bumper of a CSX high-rail truck while at work as a signal maintainer. In particular, Lewis claims that CSX was negligent in that, prior to his accident, CSX had knowledge that the rear bumpers of its high-rail trucks were slippery and dangerous, yet it took no action to correct this dangerous condition. Lewis claims that this condition could have been corrected by installing nonskid tape on the bumpers, but CSX did not do so.

Plaintiff's counsel has admitted that he conducted ex parte interviews with seven CSX employees subsequent to filing this action. Plaintiff's counsel admits that he did not inform defense counsel of these interviews; nor did he seek defense counsel's consent to conduct these interviews. According to plaintiff's counsel, each of the employees he contacted worked in the same position as Lewis, as a signal maintainer, except for one, who worked in CSX's maintenance shop. Plaintiff's counsel admits that he questioned the signal maintainers concerning the condition of the bumper on this particular truck and other similar trucks and what, if any, complaints they had made to CSX management about the condition of these bumpers prior to Lewis's accident. Counsel also admits that he questioned the maintenance shop worker on the availability of nonskid tape. None of these interviews were recorded and the only records which exist of these interviews are the attorney's notes.

### II. Analysis

CSX argues that these ex parte interviews by plaintiff's counsel violated Rule 4.2 of the Virginia Rules of Professional Conduct. CSX requests that the court prohibit plaintiff's counsel from having any additional ex parte contact with these or any other CSX employees. CSX also requests the court to order plaintiff's counsel to produce his notes of the prior interviews. In opposition to the Motion, plaintiff's counsel argues that his ex parte contact with these CSX employees did not violate Rule 4.2, and, regardless, this contact is authorized under 45 U.S.C. § 60. Plaintiff's counsel also asserts that his notes of these interviews should be protected from production by the work-product doctrine, in that these notes necessarily contain his mental impressions.

■ Rule 4.2 of the Virginia Rules of Professional Conduct provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a person he knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Rules of Supreme Court of Virginia Pt. 6, § II, Rule 4.2 (Michie 2000). When one of the parties is a corporation, this rule prohibits ex parte communication with: (1) persons having managerial responsibility for the corporate party; (2) any other person whose act or omission in connection with that matter

may be imputed to the corporate party for purposes of civil or criminal liability; or (3) any other person whose statement may constitute an admission on the part of the corporate party. *Tucker v. Norfolk & Western Ry. Co.*, 849 F.Supp. 1096, 1098 (E.D.Va. 1994), quoting MODEL RULES OF PROFESSIONAL CONDUCT Rule 4.2 cmt. (1983) and ABA Comm. on Ethics and Professional Responsibility, Formal Op. 359 (1991); *Queensberry v. Norfolk & Western Ry. Co.*, 157 F.R.D. 21, 22 (E.D.Va.1993).

While this court utilizes the Rules of Professional Conduct as adopted by the Supreme Court of Virginia, *see* U.S. District Court for the Western District of Virginia Local Rules, Part 26, Rule IV of the Federal Rules for Disciplinary Enforcement, it must nevertheless "look to federal law in order to interpret and apply those rules" and should not "abdicate to the state's view of what constitutes professional conduct even in diversity cases." *McCallum v. CSX Transp., Inc.*, 149 F.R.D. 104, 108 (M.D.N.C.1993); *Polycast Technology Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 624–25 (S.D.N.Y.1990).

The general prohibition against an attorney having ex parte contact with a represented party is based on several rationales. *See Armsey v. Medshares Management Services, Inc.*, 184 F.R.D. 569, 573 (W.D.Va.1998) (citing *Polycast Technology Corp.*, 129 F.R.D. at 625). These rationales include preventing an attorney from circumventing opposing counsel to obtain unwise statements from an adversary party. *Armsey*, 184 F.R.D. at 573. Under this rationale, a represented corporate party retains an interest in preventing an opposing attorney from eliciting uncounselled statements from its employees, since such statements could affect the corporation's potential liability. *Armsey*, 184 F.R.D. at 573.

Plaintiff's counsel argues that the CSX employees whom he contacted should not be considered to be represented persons under Rule 4.2. In particular, he states that these employees were not in supervisory or management positions with CSX. Therefore, he argues, statements by these witnesses could not be used as admissions by CSX, nor could their actions be used to impute negligence to CSX. I believe, however, that the resolution of the issue raised here involves more than simply classifying the employees as management or nonmanagement.

■ Under Federal Rule of Evidence 801(d)(2)(D), an employee's statement can be used against the employer as an admission so long as it is made during the existence of the relationship and concerns a matter within his agency or employment. Fed.R.Evid. 801(d)(2)(D); *see McCallum*, 149 F.R.D. at 110. The facts of this case are remarkably similar to those in *Tucker v. Norfolk & Western Ry. Co.*, 849 F.Supp. 1096. In *Tucker*, the plaintiff alleged that he was injured while manually transporting machinery at a welding site. 849 F.Supp. at 1099. The plaintiff alleged that the machinery he was given to use was not safe because it was not equipped with a cradle which could be used in connection with a hoist to mechanically lift the machine off and on a truck. 849 F.Supp. at 1099. Plaintiff's counsel wanted to conduct ex parte interviews with other similar employees who would have knowledge of the condition of the machinery the plaintiff was using and the extent to which cradles were available for their use. 849 F.Supp. at 1099. The court held that it was "readily apparent that these employees could only have acquired such knowledge in the scope of their employment and that, therefore, their statements might, upon establishment of sufficient foundation by plaintiff, be admissible under [Fed.R.Evid.] 801(d)(2)(D) as admissions by a party-opponent." 849 F.Supp. at 1099. *See also McCallum*, 149 F.R.D. at 112.

■ The same is true in this case. Here, plaintiff's counsel has stated that he questioned these CSX employee concerning the condition of the bumpers on this particular truck and other similar trucks. He also has stated that he questioned these employees with regard to what, if any, complaints they had made to CSX supervisory employees concerning the condition of these truck bumpers. These employee could have acquired this knowledge only in the scope of their employment with CSX. Furthermore, it appears that any complaints made by these employees regarding any alleged unsafe condition could be used by the plaintiff to impute notice of this condition to CSX. That being the case, I find that the CSX employees

contacted by plaintiff's counsel were "represented persons" under Rule 4.2.

 The court next must consider whether ex parte contact with these employees is authorized by 45 U.S.C. § 60. This section reads:

> Any contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void, and whoever, by threat, intimidation, order, rule, contract, regulation, or device whatsoever, shall attempt to prevent any person from furnishing voluntarily such information to a person in interest, or whoever discharges or otherwise disciplines or attempts to discipline any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction thereof, be punished by a fine of not more than $1,000 or imprisoned for not more than one year, or by both such fine and imprisonment, for each offense. . . .

45 U.S.C.A. § 60 (West 1986). Thus, the issue here is the interplay between 45 U.S.C. § 60 and Virginia's ethical rule prohibiting ex parte communications with represented persons.

Despite plaintiff's arguments to the contrary, I believe the proper relationship between these two provisions has been adequately addressed by the Eastern District of Virginia, first, in *Queensberry v. Norfolk & Western Ry. Co.*, 157 F.R.D. 21, and, then, in *Tucker v. Norfolk & Western Ry. Co.*, 849 F.Supp. 1096. These cases hold that while § 60 prohibits a railroad from hindering or preventing an employee from voluntarily furnishing information regarding an accident, it does not authorize an attorney to communicate with the railroad's employees ex parte in violation of the applicable ethical rules. *Tucker*, 849 F.Supp. at 1101; *Queensberry*, 157 F.R.D. at 25. These cases held that railroad employee interviews should be subject to the same ethical restrictions that are encountered by counsel for parties in all other cases involving corporate parties. *Tucker*, 849 F.Supp. at 1101; *Queensberry*, 157 F.R.D. at 25. I agree with this reasoning.

Furthermore, while ex parte interviews are not a method of discovery encompassed within Rule 26(c) of the Federal Rules of Civil Procedure, this court has authority to enter an order prohibiting such contact based on its inherent power to prohibit or remedy litigation practices which may raise or constitute ethical violations. *Armsey v. Medshares Management Services, Inc.*, 184 F.R.D. 569, 574 (W.D.Va.1998).

An appropriate order will be entered.