**In re AIR CRASH DISASTER NEAR ROSELAWN, INDIANA ON OCTOBER 31, 1994.**

No. 95 C 4593.
MDL No. 1070.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 17, 1995.

Robert L. Alpert, Chapel Hill, NC, Jerold S. Solovy, Anton R. Valukas, Sidney Schenkier, Jenner & Block, Chicago, Illinois, Charles W. Douglas, Sara J. Gourley, Sheila A. Sundvall, Sidley & Austin, Chicago, Illinois, for American Eagle, Simmons Airlines, Inc., AMR Eagle, Inc. AMR Leasing Corporation, and Robert H. Mittelman.

Michael P. Connelly, Thomas F. Tobin, Connelly & Schroeder, Chicago, Illinois, Stephen C. Johnson, Hugh Richard Koss, Lillick & Charles, San Francisco, California, for Avions de Transport Regional; ATR Support, Inc., and ATR Marketing, Inc.

Richard Palmer, Wildman Harold Allen & Dixon, Chicago, IL, for Honeywell, Inc.

Robert E. Bennett, Robert E. Bennett & Associates, Chicago, Illinois, for Plaintiffs, Sithole and Dhlamini (Masilo).

James T. Crouse, Speiser, Krause, Madole & Mendelsohn, San Antonio, Texas, for Plaintiffs, Begeny, Bonneau, Bramley, Elam (Readings), Griffo, LaRoche, Robitaille and Wright.

Kevin P. Durkin, Robert A. Clifford, Clifford Law Offices, Chicago, Illinois, for Plaintiffs MacKenzie (Tweedie), DeMarco, Guba, Modaff, Snyder and Thompson.

Michael K. Demetrio, Thomas A. Demetrio, Corboy & Demetrio, P.C., Chicago, Illinois, for Plaintiffs Bailenson, Spencer, MacDonald, Melamed (Johnson), Parmar, Sjoberg, Cunningham, and Dwyer.

James P. Kreindler, Kreindler & Kreindler, New York City, for Plaintiffs, Droy and MacMillin, Stackhouse, Sayles, Grimberg decedents (Fla.).

Kevin M. Forde, Kevin M. Forde, Ltd., Chicago, Illinois, for Plaintiff, Fulle.

Martin E. Klein, Law Offices of Martin E. Klein, Chicago, Illinois, for Plaintiff, Harast (Patrick Henry).

John R. Leach, O'Quinn, Kerensky, MCaninch & Laminack, Houston, Texas, for Plaintiff, Holberg.

William F. Maready, T. Comerford, Robinson, Maready, Lawing & Comerford, L.L.P., Winston–Salem, North Carolina, for Plaintiffs Anglemeyer and Shellberg.

Clifford M. Panek, Parrillo, Weiss & O'Halloran, Chicago, Illinois, for Plaintiff, Calderon.

Michael F. Pezzulli, Pezzulli & Associates, Dallas, Texas, for Plaintiffs, Ramm and Leech.

Donald L. Salem, Law Offices of D.L. Salem, San Diego, California, for Plaintiff Ganong.

David Ian Katzman, Schaden, Wilson & Katzman, Broomfield, Colorado, for Plaintiffs, Kim (Ko), Ramm and Leech.

Michael L. Slack, Slack & Davis, L.L.P., Austin, Texas, for Plaintiff, Buck (Tribble).

Herbert F. Stride, Stride, Craddock & Stride, Chicago, Illinois, William J. Harte, William J. Harte, Ltd., Chicago, Illinois, for Plaintiff, Ernst.

Donald Nolan and Bill Jovan, Chicago, Il, for Severin, Moore, Cunningham, W.

Thomas P. Meehan, Sherman, Meehan & Curtin, P.C., Washington, DC, for Robert Holberg.

*MEMORANDUM OPINION AND ORDER*

CASTILLO, District Judge.

This is the second opinion this Court is issuing today in this case. In its initial opinion (*"Roselawn I"*) this Court determined that it has jurisdiction to preside over the consolidated cases which have been filed as a result of the tragic crash of American Eagle Flight 4184. This opinion (*"Roselawn II"*)[1] involves serious ethical issue which will often be confronted by plaintiffs' attorneys who seek to aggressively represent their clients. This issue is presented to the Court in the form of the Airline Defendants'[2] motion for sanctions, which alleges that members of the plaintiffs' counsel violated certain of the Rules of Professional Conduct for the Northern District of Illinois, ("Rules") which were promulgated by this district on October 29, 1991 and which became effective on November 12, 1991. Specifically, the Airline Defendants claim that plaintiffs' counsel, Robert A. Clifford, and his co-counsel, Corboy & Demetrio P.C., (hereinafter referred to as "Plaintiffs' Counsel") engaged in unethical conduct in violation of Rules 4.2 and 4.3. In light of the seriousness of the alleged transgressions, the Airline Defendants request that this Court impose sanctions on Plaintiffs' Counsel "to make sure that [Plaintiffs'] Counsel do not benefit from this misconduct, and to discourage others from engaging in that similar misconduct." (Def.Mem. at 3).

## BACKGROUND

The facts surrounding this consolidated multidistrict litigation are amply set forth in *Roselawn I* and will not be repeated here; however, review of certain additional relevant facts is in order. The aircraft involved in this crash was an ATR 72–212, manufactured by Avions de Transport Regional ("ATR") and flown by Simmons Airlines, Inc. ("Simmons"). ATR, Simmons, and various corporations related to them are defendants in the consolidated lawsuits pending before this Court. On June 13, 1995, the Court entered a Scheduling Order which allowed damages discovery to proceed but deferred liability discovery in light of: (1) the then pending motions to remand almost all the cases back to state court; (2) the then pending motion to consolidate all the cases arising out of the accident under the rules for multidistrict litigation and (3) the still pending National Transportation Safety Board ("NTSB") investigation into the causes of the crash of American Eagle Flight 4184.

*The Disputed Questionnaire*

On or about May 24, 1995, the Airline Defendants learned that several Simmons pilots had received a letter and questionnaire ("the ATR Questionnaire") from Robert Rendzio, who is the president of a consulting firm named Safety Research Corporation of America ("SRCA"). (Def.Mot. for Lim.Disc. ¶ 2). A representative sample of one of these letters and questionnaires is attached to this Opinion as Appendix A.* The main focus of the ATR Questionnaire pertained to the training and experience of ATR pilots in icing conditions. In light of the fact that the NTSB was investigating whether icing conditions played a significant role in causing the accident, the Airline Defendants became sus-

---

1. This Memorandum Opinion and Order is entered by the Court in *In Re Air Crash Disaster Near Roselawn, Indiana on October 31, 1994* (95 C 4593) and in all other cases pending before the Court arising out of this accident. See *Roselawn I* at n. 1.

2. Simmons Airlines, Inc., AMR Eagle, Inc., American Airlines, Inc., AMR Leasing Corporation, and AMR Corporation (collectively, "the Airline Defendants") are defendants in one or more of the cases before the Court.

\* Editor's Note: The questionnaire portion of Appendix A is not reproducible and has been omitted for purposes of publication.

picious that the ATR Questionnaire was in some way linked to the pending litigation.[3]

The Airline Defendants found portions of the letter and ATR Questionnaire to be objectionable. For example, the ATR Questionnaire allowed for pilots to provide their names and addresses when responding, thereby making known the identity of the survey respondent. Moreover, the Airline Defendants found the cover letter that accompanied the ATR Questionnaire to be "misleading." Specifically, the cover letter stated, without further clarification, that Mr. Rendzio received the names of the pilots from the FAA—thus implying that the ATR Questionnaire was endorsed by the FAA. The cover letter also suggested that the questionnaire was being conducted by a disinterested party.

The Airline Defendants began investigating to find out whether, indeed, the ATR Questionnaire had been commissioned by Plaintiffs' Counsel. After contacting Mr. Rendzio several times, the Airline Defendants were unable to ascertain the identities of the persons who commissioned the survey. Furthermore, time was becoming an important factor for the Airline Defendants. Though SRCA had only sent the first sample of ATR Questionnaires to 50 ATR pilots, a second sample of 200 and a third sample of 800 were scheduled to be distributed in the near future. In fact, the Airline Defendants claim that during a June 16, 1995, telephone conversation, Mr. Rendzio stated that the "intermediary" had instructed him to resume sending the questionnaires to ATR-qualified pilots, including pilots employed by Simmons. (Def.Mot. for Lim.Disc. ¶ 7).

Because the Airline Defendants were unable to determine the identity of those persons who had commissioned the survey and more ATR Questionnaires were about to be sent, the Airline Defendants prepared to file a motion for leave to take limited discovery in order to determine whether Plaintiffs' Counsel were involved in the distribution of the ATR Questionnaire.[4] The information sought by the Airline Defendants included: (1) the identity of the "undisclosed client" who commissioned the ATR Questionnaire, and (2) the identity of the "intermediary" who provided directions to the ATR Questionnaire developer and distributor, Mr. Robert Rendzio, of SRCA. (Def.Mem. at 1).

However, on June 26, 1995, the day before the hearing on this motion was to take place, Robert A. Clifford, representing certain plaintiffs in these cases, telephoned the Airline Defendants' Counsel and admitted that he and his co-counsel, Corboy & Demetrio P.C., were the "undisclosed clients" who had commissioned the ATR Questionnaire. (Def.Mem. at 2). In addition, Mr. Clifford admitted that the "intermediary" was a consulting expert whom Mr. Clifford had retained to work on the litigation arising out of the Roselawn accident. *Id.* The next morning, on June 27, Mr. Clifford made these same admissions to the Court.[5] Following such disclosure, the Airline Defendants converted their discovery motion into a motion for sanctions. (Def.Mem. at 3).

*The Clifford Affidavit*

To his credit, Mr. Robert A. Clifford has filed an affidavit which takes full responsibility for his actions and which seeks to explain

---

3. In fact, one of the questions in the ATR Questionnaire specifically requests the pilot to distinguish between training received through October 1994 (the month of the Roselawn accident) and training received thereafter. (ATR Questionnaire ¶ 6).

4. Mr. Rendzio allegedly informed one of the Airline Defendants' Counsel that he sent the ATR Questionnaire at the request of an "undisclosed client," whose identity he did not know. He further stated that he had received instructions concerning the ATR Questionnaire from an "intermediary" who refused to permit disclosure of his/her identity. (*See* Letter to Mr. Rendzio from Anton Valukas dated June 1, 1995 at 2). Subse-

quent attempts to ascertain the identities of the "undisclosed client" and "intermediary" were unsuccessful. (*See* the Fax Transmission to Sidney Schenkier from Robert Rendzio dated May 30, 1995 and the Letter to Mr. Rendzio from Sidney Schenkier dated June 14, 1995). These Letters are attached as exhibits to the above-referenced motion.

5. Mr. Clifford stated before the Court that "a survey has been commissioned by a consulting expert who is employed by my law firm, the Corboy law firm, and that expert is the one who has contacted the survey company." (Tr. of June 27, 1995 Proc. at 5).

the context in which he commissioned the disputed questionnaire. This affidavit makes it clear that Mr. Clifford was "the only attorney associated with Corboy & Demetrio and Clifford Law Offices to have worked on this matter" and "the only lawyer responsible for all of the complained of activity." (Clifford Declaration at 2).

This Court has closely reviewed Mr. Clifford's affidavit and concluded that it establishes his good faith and intentions. This affidavit candidly acknowledges that "[i]n hindsight—a logical extension of the completed survey process could possibly result in a managerial or supervisory person's receipt of the survey." (*Id.* at 4) In his apology to the Court, counsel, and the Airline Defendants, Mr. Clifford admits that "[c]ontact with a 'represented party' under [the] circumstances may well be criticized." (*Id.*) However, he notes that "it is a far cry from something that occurred intentionally or with the inappropriate scheme erroneously outlined by Defendants." (*Id.*). In his defense, Mr. Clifford asserts that "[i]t was not until after finding out about the Jenner & Block motion that [he] knew the identity of the survey company, the fact that the survey indeed has been started on a phased process and the format of the survey." (*Id.*). Mr. Clifford also generally asserts that it was his "understanding that similar surveys had been conducted in other commercial air crash disaster litigation." (*Id.* at 3). However, no specific cases are detailed.

## DISCUSSION

The Airline Defendants assert that Plaintiffs' Counsel engaged in conduct that is contrary to the Rules by (1) sending the cover letter and ATR Questionnaire to ATR pilots

employed by Simmons constituted an *ex parte* contact in violation of Rule 4.2; (2) contacting "unrepresented persons" in violation of the requirements set forth in Rule 4.3; and (3) circumventing the Airline Defendants' right under Rule 3.4(c)[6] to instruct the pilots to refrain from voluntarily answering the Questionnaire. (Def.Mem. at 3).

## I. VIOLATIONS OF THE RULES OF PROFESSIONAL CONDUCT

In response to the foregoing allegations, Plaintiffs' Counsel first assert that their conduct should be governed by the Illinois state laws of professional conduct rather than the Rules of this Court. Plaintiffs' Counsel argue that the state rules should apply because the "cases originated in the Circuit Court of Cook County" and "the steps which led to the preparation and use of this questionnaire arose at a time when these matters were still before the Illinois courts." (Pl.Resp. at 4, 6). Such arguments, however, are unpersuasive because the ATR Questionnaires were distributed and the contact occurred well after the cases had been removed to federal court.[7] (Def.Rep.Mem.App.A). Plaintiffs' Counsel had more than enough time to re-evaluate their decision to distribute the ATR Questionnaires under the Rules. It is well-settled that this Court has the "inherent authority to regulate the conduct of the members of the bar who have occasion to practice before it." *Harceg v. Brown*, 512 F.Supp. 788, 790 (N.D.Ill.1981) (citing *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706, 710 (7th Cir.1976) and *Cannon v. U.S. Acoustics Corp.*, 398 F.Supp. 209 (N.D.Ill.1975)). Therefore, since the alleged *ex parte* contacts occurred while the cases were before this Court, the Rules of this Court shall apply.[8]

---

6. Rule 3.4(c) is the Northern District's rule that is comparable to the Model Code of Professional Conduct Rule 3.4(f).

7. Eleven complaints filed in the state court were removed to this Court on February 1 and 14, 1995, more than three months before Mr. Rendzio began sending the ATR Questionnaire. Three other cases were removed on April 7 and 20, approximately one month prior to the date of distribution (May 16, 1995). (Air.Defs.' Rep. Mem.App. A).

8. Even if the Illinois state rules were to apply as Plaintiffs' Counsel argues, the end result would likely be the same. The Illinois Supreme Court, like the Northern District, has adopted Rule 4.2 but has neither endorsed nor rejected the accompanying comments and has not yet been called upon to consider which employees are "represented" within the meaning of Rule 4.2. Prior to the adoption of Rule 4.2, one Illinois appellate court applied the narrower "control group" test to determine which current employees of a corporation could be contacted on an *ex parte* basis. *Fair Automotive Repair, Inc. v. Car–X Serv. Sys.*,

## A. RULE 4.2 VIOLATION

The Airline Defendants claim that sending the cover letter and questionnaire to the Airline Defendants' ATR pilots was an *ex parte* contact in violation of Rule 4.2. Rule 4.2 provides:

> During the course of representing a client a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter unless the first lawyer has obtained the prior consent of the lawyer representing such other party or as may otherwise be authorized by law.

■ Rule 4.2 serves two distinct but related purposes. It preserves the integrity of the lawyer-client relationship by prohibiting contact, absent consent or legal authorization, with the represented party. *Public Serv. Elec. & Gas Co. v. Associated Elec. & Gas Ins. Serv.*, 745 F.Supp. 1037, 1039 (D.N.J.1990) (citing *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)). It also recognizes that without such a Rule "the professionally trained lawyer may, in many cases, be able to win, or in the extreme case coerce, damaging concessions from the unshielded layman." *Id.* The Rule is designed to prevent counsel from overreaching and exploiting uncounseled employees into making ill-considered statements or admissions. *Polycast Technology Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 624 (S.D.N.Y.1990). While the Rule is not intended to prevent a party from discovering potentially prejudicial facts, it is intended to protect the attorney-client relationship of counsel with a corporate client. *See Breedlove v. Tele–Trip Co., Inc.*, No. 91 C 5702, 1992 WL 202147, at *1 (N.D.Ill Aug. 14, 1992).

In those cases where the parties are individuals, Rule 4.2 is easily enforced because it is easy to identify the "represented parties" protected. However, when the named party is a corporation, as in the instant case, it is more difficult to delineate the parameters and scope of the protected class. Corpora-

*Inc.*, 128 Ill.App.3d 763, 84 Ill.Dec. 25, 471 N.E.2d 554 (2d Dist.1984). However, it is well settled that Rule 4.2 generally expands the scope of employees protected from *ex parte* contacts.

tions can only act through individuals; but it can be troublesome to determine which individuals are the "represented parties" protected by the rule. The Official Comment to Rule 4.2 explains that in cases involving an organization or corporation as a client:

> [T]his Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

*See also Shamlin v. Commonwealth Edison Co.*, No. 93 C 2149, 1994 WL 148701, at *3 (N.D.Ill. Apr. 20, 1994); *Breedlove*, 1992 WL 202147, at *1.

Particularly in cases involving corporate defendants, Rule 4.2 unquestionably restricts a party's ability to conduct low cost, informal discovery. However, such a restriction is necessary because the provisions of Fed. R.Evid. 801(d)(2)(D) allow an employee's statement to be used against the employer as an admission so long as it is made during the existence of the relationship and concerns a matter within his agency or employment. Under Fed.R.Evid. 801(d)(2)(D), virtually every employee may conceivably make admissions binding on his or her employer. *Chancellor v. Boeing Co.*, 678 F.Supp. 250, 251 (D.Ka.1988) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 391, 101 S.Ct. 677, 683, 66 L.Ed.2d 584 (1981)). The *Chancellor* court noted:

> Middle-level—and indeed lower-level—employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties.

*See Shearson Lehman Bros., Inc. v. Wasatch Bank*, 139 F.R.D. 412, 416–17 (D.Utah 1991). Thus, it is unlikely that the control group test would be applied even under Illinois law.

*Id.* at 251. Since an employee could potentially bind the corporation pursuant to Fed. R.Evid. 801(d)(2)(D), it is fair to require that the employer's attorney be present. Nevertheless, this Court recognizes that it may be difficult to determine which employees fit into the category prior to attempting discovery. This difficulty, however, does not justify an aggressive approach that results in ethical violations. Instead, counsel, when confronted with a need to obtain information from witnesses that might reasonably lead to ethical problems, must take a conservative rather than aggressive approach. The "chalk lines" drawn by the ethical rules are meant to be avoided at all costs. The goals should not be to come so close to the "chalk lines" that one is covered in white dust. The goal must be to operate at all times well within the ethical "chalk lines" drawn by our ethical rules.

In particular, this Court finds the Court's solution in *McCallum v. CSX Transp., Inc.*, 149 F.R.D. 104 (M.D.N.C.1993) to be well reasoned and compelling. There the court, in a well reasoned opinion, stressed that the "tension between the ethics of contacting an opponent's employees, the need for informal discovery, and the dangers of Rule 801(d)(2)(D) do not present an 'insurmountable barrier'". *Id.* at 110. Magistrate Judge Eliason wisely noted that an attorney seeking to ascertain an appropriate course of conduct need only request permission from the company's attorney *or* seek permission from the court" prior to making any informal contacts. *Id.* (emphasis added). Magistrate Judge Eliason poignantly noted that: "[T]he attorney who seeks court approval before contact does not risk an ethical violation, but one who does not acts at his or her own peril." *Id.; see also Cagguila v. Wyeth Laboratories, Inc.*, 127 F.R.D. 653, 654 (E.D.Pa. 1989) (stating that in an unsettled situation, a party has an ethical duty to seek the court's guidance as opposed to acting on its own).

Under this approach, Rule 4.2 does not prohibit all informal contacts with corporate employees as long as adequate measures are taken by counsel who is heading into an "ethical mine field." For example, in *Chancellor* the plaintiff filed a motion for an order permitting *ex parte* interviews of certain witnesses before taking any action. 678 F.Supp. 250.

■ As the Rule applies to the instant case, this Court finds the sending of the ATR Questionnaire and its receipt by the Simmons pilots to be an *ex parte* contact in violation of Rule 4.2. First, the ATR Questionnaire clearly sought information that is at the core of "the matter in representation" as outlined by the Official Comment. For example, the ATR Questionnaire focused specifically on training and experience of ATR pilots in icing conditions and specifically asked the questionnaire respondents to differentiate between training received prior to October 1994, when the Roselawn accident occurred, and training received after such time. *See* Appendix A. Second, the Simmons pilots are persons whose statements "may constitute admissions on the part of the organization." According to Fed.R.Evid. 801(d)(2)(D), "[a] statement is not hearsay if ... [it] is offered against a party and is ... a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship...." *Nekolny v. Painter*, 653 F.2d 1164, 1171 (7th Cir.1981). Flying ATR planes, even in icing conditions, is well within the scope of the Simmons pilots' employment. Therefore, any statements they might have made with regard to inadequate training or problems with the plane within that scope could be deemed admissions of the Airline Defendants.[9] *See McCallum*, 149 F.R.D. at 112 (holding that employees, whose job it was to look for problems which caused an industrial accident, should not have been

---

9. Although there is no evidence that such contacts actually occurred, Plaintiffs' Counsel has admitted that the ATR Questionnaire could have ultimately contacted Simmons pilots "having a managerial responsibility on behalf of the organization." (Decl. of Robert Clifford at 4) (stating "In hindsight, I readily acknowledge that a logical extension of the completed survey process could possibly result in a managerial or supervisory person's receipt of survey. If that had occurred, then indeed the contact is subject to scrutiny and potential criticism"). These admissions clearly illustrate the seriousness of Plaintiffs' Counsel's actions, as well as the need to comply with the procedures outlined herein.

contacted because those statements would be binding on the defendant corporation).

■ Plaintiffs' Counsel's argument that this issue involves a "gray area" or at least "an area that lacks precise and simple definition," thereby excusing their conduct, is simply unpersuasive. The Official Comment to Rule 4.2 provides an explicit interpretation regarding the meaning of "represented parties" in the corporate context. Moreover, even if the experienced Plaintiffs' Counsel found that the rule was unclear, they had a duty to ask the opposing counsel's permission *or* obtain this Court's approval prior to distributing the ATR Questionnaire. In conclusion, if Plaintiffs' Counsel thought there truly was a disparity between possible interpretations of the rule, counsel had three courses of action available: (1) follow the more restrictive interpretation of the Rule; (2) contact opposing counsel; or (3) seek guidance from the Court. *See McCallum,* 149 F.R.D. at 112.

## B. RULE 4.3 VIOLATION

The Airline Defendants also allege that Plaintiffs' Counsel violated Rule 4.3 by sending the ATR Questionnaire under a "deceptive cover letter that concealed that the questionnaire was being done at the direction of counsel for use in pending litigation." (Def.Mem at 10). Rule 4.3 provides the following:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

Because the Court has found the Simmons pilots to be "represented parties" under Rule 4.2, Rule 4.3 is no longer applicable to them.[10] However, this Court notes that the ATR pilots, other than those employed by the Airline Defendants, are "unrepresented persons" under Rule 4.3, and any contacts with them are governed by that rule. Therefore, this Court will examine whether Plaintiffs' Counsel did in fact violate Rule 4.3.

■ The Court finds that the cover letter accompanying the ATR Questionnaire contained misleading information regarding the true purpose underlying the distribution of the questionnaire. The cover letter does not disclose on its face the fact that the ATR Questionnaire was prepared at the request of an attorney on behalf of plaintiffs who have sued the Airline Defendants. Moreover, the letter goes to great lengths to persuade the recipient of its neutral and unbiased character. For example, the letter describes the questionnaire as an "independent survey," thereby implying that there is no underlying motive in obtaining the information and that the parties seeking such information are "disinterested," even though Rule 4.3 explicitly states that a lawyer shall not imply that he or she is disinterested. Furthermore, the letter explains that the pilots' names were "provided to us by the FAA," strongly implying that the FAA was participating or, at least, had endorsed the survey. Finally, the letter states that the questionnaire focused on icing conditions and the ATR aircraft solely "[i]n our attempt to keep the questions to an absolute minimum" rather than because that is the nature of the litigation. (See Appendix A).

Such deception, which is undertaken or at least condoned by Plaintiffs' Counsel through their intermediary, is a paradigm example of conduct prohibited by Rule 4.3. The ATR pilots who received the questionnaire may have been led to believe that they were dealing with a disinterested third party. Since Plaintiffs' Counsel are not disinterested parties, attempting to mislead the ATR pilots into so believing is a clear violation of Rule 4.3.

The Court specifically finds that Plaintiffs' Counsel not only failed to take precautions to prohibit any misunderstandings associated with the cover letter and ATR Questionnaire, but also affirmatively violated the rule by not

---

10. Of course, to the extent that Plaintiffs' Counsel has argued that they did not consider the Simmons pilots to be "represented parties" under Rule 4.2, they can hardly seek refuge from Rule 4.3 scrutiny by claiming that the Simmons pilots *are* "represented parties."

fully disclosing their representative capacity and the true motive behind obtaining such information. In light of the numerous airline incidents that have occurred in recent years, with ATR planes in particular, it is not illogical to suspect that the ATR pilots might respond overzealously in an attempt to generate a quick favorable response by the FAA. The illusive language used in the cover letter may have ultimately led the ATR pilots to make exaggerated or untrue statements in order to protect their own livelihoods.

■ The fact that Plaintiffs' Counsel, themselves, did not actually develop the ATR Questionnaire and cover letter is irrelevant with regard to their accountability for such actions. According to Rule 8.4(a)(2), "[a] lawyer shall not induce another to engage in conduct, or give assistance to another's conduct, when the lawyer knows that conduct will violate these Rules." Therefore, Plaintiffs' Counsel are legally responsible for the violation of Rule 4.3 since they hired the intermediary and Mr. Rendzio, thereby "inducing" them to formulate the ATR Questionnaire and misleading cover letter. An attorney can not evade his professional and ethical obligations by delegating the job of developing and distributing deceptive materials to a paid expert or consultant.

## C.  RULE 3.4(c) VIOLATION

■ The Airline Defendants finally claim that the "secretive nature" of the *ex parte* contact was an attempt to circumvent their right, under Rule 3.4(c), to instruct their pilots to "refrain from voluntarily" providing any information in response to the ATR Questionnaire. In particular, the Airline Defendants contend that Plaintiffs' Counsel's failure to disclose their identity in the cover letter, or at the time the Airline Defendants originally questioned the possible connection, prohibited the Airline Defendants from requesting that the Simmons pilots refrain from voluntarily responding to the ATR Questionnaire. While this Court fully sympathizes with the position of the Airline Defendants, we believe that we can not give Rule 3.4(c) the expansive breadth that Defendants propose, especially because this Rule, like the others, is a strict liability rule. Under the circumstances of this case, Plaintiffs' Counsel did not affirmatively violate Rule 3.4(c).

## II.  SANCTIONS

The Airline Defendants seek the following relief with regard to the above violations: (1) a requirement that any questionnaires returned in response to the initial distribution be turned over to the Airline Defendants, with a certification that neither copies of the questionnaires nor the information in them has been retained or used; (2) a continuance of the current order barring Plaintiffs' Counsel from any further distribution of questionnaires to the Airline Defendants' pilots, and a court ordered procedure for removing from Plaintiffs' Counsel the list of the Airline Defendants' pilots; (3) a requirement that if Plaintiffs' Counsel intends to send questionnaires to pilots other than the Airline Defendants' pilots, they shall use a Court-approved letter; (4) a bar of all Plaintiffs' Counsel from contacting the Airline Defendants' employees, except as permitted by the Federal Rules of Civil Procedure; and (5) an award for the Airline Defendants of all reasonable fees and costs related to this issue. (Def.Mem. at 13–15).

The Supreme Court has made it clear that a federal court's decision to admit to practice or discipline an attorney arises from an exercise of that court's inherent power. *In Re Snyder,* 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 2881 n. 6, 86 L.Ed.2d 504 (1985). Thus, this Court has broad discretion to award the Airline Defendants the relief they seek herein. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 404, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990).

■ In deciding the appropriate sanctions for the ethical violations found by this Court, it is appropriate to consider the seriousness of the violations and whether the violations were intentional, as well as the nature and extent of prejudice suffered or likely to be suffered by the parties in the future as a result of the violation. *See generally, In re*

*American Airlines, Inc.,* 972 F.2d 605, 611 (5th Cir.1992). After careful consideration of all the relevant factors this Court has concluded that granting all the requested relief sought by the Airline Defendants, would not be appropriate in this case.

■ Based on its review of all the relevant factors, this Court grants the Airline Defendants' Motion for sanctions and orders that: (1) all questionnaires be returned to the Airline Defendants' counsel within fourteen days of this order; (2) the current order barring Plaintiffs' Counsel from any further distribution of the questionnaires be extended until such time as the Court approves a questionnaire procedure, if and when requested by the parties; and (3) this Court will bar the questionnaires from being offered as evidence in this case.

This Court seriously contemplated the use of further sanctions in this case, including monetary sanctions. The Court, however, has come to the conclusion that further sanctions are not appropriate under the circumstances of this case. As noted several times herein, the Court has found that Plaintiffs' Counsel did operate in good faith but used poor judgment. The Court is also mindful of the fact that there is a general absence of case law in this area. Finally, and most significantly, the Court is well aware that these motions and this resulting opinion is more than enough punishment for Mr. Clifford. The Court has no question in its mind that Mr. Clifford will not violate the Rules in the future. More importantly, this opinion should have a future deterrent effect on other members of the bar who are considering any actions subject to debate under our Court's ethical rules. Other members of the bar are hereby on notice that their actions may lead to more serious sanctions than those issued by this Court today.

## CONCLUSION

This Court has and continues to have high regard for the Plaintiffs' Counsel whose conduct has been reviewed herein. Plaintiffs' Counsel have a long and successful history of service to their clients and to Chicago's legal community. Unfortunately, yesterday's good actions do not serve to excuse today's failures.

Today, the Court finds that Plaintiffs' Counsel, as experienced and able counsel, should have known that their retention of Mr. Rendzio and his company would lead to the ethical violations we find today. Therefore, Plaintiffs' Counsel were obligated by the Rules of Professional Conduct to contact opposing counsel in order to provide them with a fair opportunity to seek prior court review of this issue. Alternatively, Plaintiffs' Counsel should have contacted this Court to obtain prior permission for their questionnaire.

This Court fully realizes that the demarcation between aggressive lawyering, which is praised, and unethical conduct which is sanctioned, is too often clouded. Perhaps more case law, such as this opinion, is needed in this area. Nevertheless, the facts surrounding the disputed questionnaire disclose clear ethical violations which can not be condoned by this Court.

Finally, this Court specifically notes that Plaintiffs' Counsel did not intentionally set out to violate the Professional rules of Conduct reviewed herein. Instead, this Court notes that ethical violations reviewed herein were caused by Plaintiffs' Counsel's understandable desire to zealously represent the families of the crash victims of Flight 4184. However, even zealous advocacy must confine itself to the Rules of Professional Conduct—violation of which does not require intentional conduct. Instead, as must be the case, these Rules are more in the nature of strict liability rules. Today, this Court gives renewed force to these strict liability rules in the hope that the entire bar seriously consider the Rules of Professional Conduct before proceeding with action which is subject to any debate under the Rules.

For all the reasons indicated herein, this Court grants the Airline Defendants' Motions for Sanctions and hereby orders that: (1) any questionnaires returned in response to

the initial distribution be turned over to the Airline Defendants' counsel within fourteen (14) days of this order; (2) that the current order barring Plaintiffs' Counsel from any further distribution of the questionnaires will be extended until such time as the Court approves a questionnaire procedure, if and when requested by the parties; and (3) this Court will bar the disputed questionnaires from being offered as evidence in this case.

## APPENDIX A

# SAFETY RESEARCH CORPORATION OF AMERICA

Program Development • Research • Investigations

106 Keisha Circle, Suite A
Ozark, Alabama 36360-3528
(205) 774-1555, FAX (205) 774-2331

May 16, 1995

Mr. Robert J. Baptist
680 Kenwood Road
Fayetteville, GA 30214-3303

Dear Mr. Baptist:

Safety Research Corporation of America (SRCA) is conducting an independent survey regarding ATR-42 and ATR-72 pilots. The information necessary to contact you was provided to us by the FAA and will be held in the strictest confidence.

The enclosed survey examines your experiences during icing conditions and asks detailed information about your pilot training, your general experience, your education, and your company's current training procedures. In our attempt to keep the questions to an absolute minimum, the survey addresses issues pertaining to icing with the ATR-42 and ATR-72. Please feel free to add any additional comments you may have on this topic.

The questionnaire is self-explanatory and includes a "Personal Information" section at the end if you are interested in obtaining the results, or if you are willing to take part in future research. However, it is not necessary to fill the section out if you wish to remain anonymous. Again, we assure you that your name or address will not be shared with any other party. We thank you for your cooperation, and look forward to receiving your survey (using the enclosed return envelope) within the next two weeks. If you prefer to speak with us, please contact us at (334) 598-8893.

Sincerely,

Robert Rendzio
President, SRCA