## CIRCUIT COURT OF THE CITY OF WINCHESTER

Nila Sue Dupont

v.

Winchester Medical Center, Inc., et al.

June 3, 1994

Case No. (Law) 92-171

BY JUDGE JOHN E. WETSEL

This case came before the Court on the motion of the Defendant Winchester Medical Center for a protective order to prohibit the plaintiff and any of her agents from engaging in *ex parte* communications with the Medical Center's nurses concerning the subject matter of this medical malpractice action. At the request of the Court, parties have submitted memoranda of authorities within a very short period of time, in which they make articulate, well supported arguments in support of their respective positions. Upon consideration whereof, the Court has made its decision to grant the motion for a protective order.

### I. *Statement of Material Facts*

Plaintiff has filed a medical malpractice action against Winchester Medical Center and one of her treating physicians, Dr. Goff. In Count I of the Motion for Judgment, the plaintiff claims that surgical sponges were left in the plaintiff's chest cavity. Who placed the surgical sponges and failed to remove them is disputed, but nurses at the Medical Center are charged by the plaintiff with negligence for having left the sponges in the plaintiff.

## II. *Conclusions of Law*

The patient health care provider privilege is created by statute in Virginia. Virginia Code § 8.01-399. Nothing in this statute precludes a patient from discussing his case with his health care providers at any time provided that they will speak to him. In 1993 this statute was dramatically rewritten and subsection D of that added, which states:

> Neither a lawyer, nor anyone acting on the lawyer's behalf, shall obtain, in connection with pending or threatened litigation, information from a practitioner of any branch of the healing arts without the consent of the patient except through discovery pursuant to the Rules of Court as herein provided.

The term "practitioner of any branch of the healing arts" is a term of art, and Virginia Code § 54.1-2903, which defines the practice of the healing arts, does not include nursing care within the definition of the practice of healing arts. Moreover, the definition of "healing arts" in § 54.1-2900 differs from the definition of the various types of nursing defined in Virginia Code § 54.1-3000, so there must be some distinction. However, regardless of whether nurses are health care providers within the meaning of section 8.01-399, the Medical Center may appropriately talk to its nurses who are its employees with respect to their treatment of the plaintiff in a medical malpractice action. A corporation by its very nature only acts through its employees and agents, and corporate supervisors may always confer with their unrepresented employees about a matter in litigation.

The fundamental question in this case is whether the plaintiff may have *ex parte* contacts with nurses who are employees of the medical center who attended to the plaintiff during her stay at the hospital and upon whose statements or acts liability may be imputed to the medical center. While the Virginia Code of Professional Responsibility D.R.7-103(A)(1) and Rule 4.2 of the ABA Model Rules of Professional Conduct may be substantially similar, *see Tucker v. Norfolk & Western Ry. Co.*, Civil Action No. 3:93CV841 (E.D. Va. 1994), the rules governing what corporate employees may be contacted *ex parte* by an attorney suing the corporation are subject to interpretation and differ among jurisdictions. *See generally*, Louis A. Stahl, *Ex parte Interviews With Enterprise Employees: a Post-UpJohn Analysis*, 44 Wash. & Lee L. Rev. 1181 (1987). The official comment to Rule 4.2 of the ABA Model Rules discusses the application of the *ex parte* contact rule in the context of a corporate client as follows:

In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the corporation, and with any other person whose act or admission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

The Virginia Supreme Court has not addressed this issue, but two Federal District Court decisions in the Eastern District of Virginia have sustained motions *in limine* prohibiting the plaintiff from engaging in *ex parte* communications with corporate employees concerning the subject matter of litigation where the employees' statements, potentially given in the *ex parte* communications, could be used against the employer either as an admission or as a predicate for vicarious liability. *See Queensberry v. Norfolk & Western Ry. Co.*, Civil Action No. 3:93CV163 (E.D. Va. 1963), and *Tucker v. Norfolk & Western Ry. Co., supra.* While it is doubtful that the nurse's statements could bind the Medical Center, *see generally* C. Friend, *The Law of Evidence in Virginia*, § 18-37 (4th ed. 1993), the acts of the nurses may impose vicarious liability on the Medical Center. *See Naccash v. Burger*, 223 Va. 406, 418-419, 290 S.E.2d 834 (1982).

The streams of permissible discovery and permissible professional conduct by attorneys overlap on this issue, and while the two currents may flow in the same direction they are not coterminous. Obviously, an attorney may not use unprofessional means to obtain otherwise admissible evidence, e.g., breaking into a business to obtain business records which incriminate the adversary. Conversely, the scope of permissible discovery may be less than the scope of evidence obtainable through legitimate professional conduct. For example, in divorce suits and condemnation actions discovery is limited to "matters which are relevant to the issues . . ." Supreme Court Rule 4:1(b)(5), but a party or his attorney may make informal inquiries outside formal discovery channels in such cases which are broader in scope than that permitted under the rules of discovery, so long as the rules of professional responsibility are not transgressed.

The Medical Center relies upon the United States Supreme Court's decision in *UpJohn v. United States*, 449 U.S. 383, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981), and its Virginia District Court progeny *Tucker* and *Queensberry, supra*, to argue that any employee who might bind the corporation by their acts or admissions should only be contacted by the op-

posing side through formal discovery channels. However, the Virginia Legal Ethics Opinions on the extent to which an attorney may contact corporate employees, relied upon by the Plaintiff, while acknowledging the existence of *UpJohn*, continue to contain "control group" analysis language in their ethics opinions. *See* LEO's 1504, 1076, 905, 801, 795, 777, 533, and 530 (all post *UpJohn*), and LEO 347 (pre *UpJohn*). The most recent of these legal ethics opinions is 1504, which refers to the control group analysis, and, in that opinion the committee states:

> [T]he committee has consistently opined that it is not impermissible for an attorney to directly contact and communicate with employees of an adverse party provided that the employees are not members of the corporations "control group" and are not able to commit the organization or corporation to specific courses of action that would lead one to believe the employee is the corporation's alter ego. *See, e.g.*, Legal Ethics Opinion Nos. 347, 530, 795, 905; *UpJohn Co. v. U.S.*, 449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981).

Technically speaking, the nurses are not the alter ego of The Medical Center in terms of piercing the corporate veil analysis. *See R. F. & P. Corp. v. Little*, 247 Va. 309 (1994); and *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 212, 360 S.E.2d 828 (1987). However, the nurses' negligent acts may make the Medical Center vicariously liable in that the nurses may "act on behalf of the corporation or make decisions on behalf of the corporation in the particular area which is the subject matter of the litigation . . . ." LEO 905, which will control the destiny of the Medical Center *vis a vis* its potential liability to the Plaintiff. This LEO 905 language, which LEO 1504 characterizes as "dispositive," is substantially similar to that of the official comment to ABA Mode Rule 4.2, and is in fact a functional analysis based upon either the employee's relationship to the corporation ("make decisions on behalf"), which is the traditional control group analysis, or the employees's participation in the events giving rise to the cause of action ("act on behalf of the corporation"), which is closely akin to the substance of the official comment to ABA Rule 4.2.

As noted by Judge Spencer in *Queensberry, supra*, there is obviously tension between the need for cost effective, informal discovery by the plaintiff and the need for the corporate defendant to adequately defend itself when sued. Where the employees are actual players in the alleged negligent act or where they have the authority to make decisions to bind

the corporation, then they are acting as the corporation with regard to those acts and are in essence its alter ego. A corporation may have many heads and even more hands, and any one or more of the heads and hands may bind the corporation. There is no reason why a corporation or other organization, which must act through surrogates, should be afforded less protection under the rules of discovery than a natural person. Therefore, the better rule to be applied in the context of permissible discovery and *ex parte* contacts would be that of the official comment to ABA Model Rule 4.2 and LEO 905. Accordingly, the plaintiff may not contact The Medical Center's nurses who were, or may be, directly involved in the sponge issue in this case outside the discovery process. However, to the extent that employees of the Medical Center are not persons "whose act or omission in connection with that matter [in litigation] may be imputed to the organization for purposes of civil . . . liability or whose statement may constitute an admission on the part of the organization," those corporate employees may be contacted *ex parte* by the Plaintiff.

The Court has considerable discretion in the issuance of a protective order. *See* Supreme Court Rule 4:1(c) and 23 Am. Jur. 2d, *Depositions and Discovery*, §§ 89 and 90. The ethics opinions of the Virginia State Bar, while instructive, are not controlling on the Court in its decision to grant a protective order, which is within the boundaries of permissible professional conduct. In this case the Medical Center has instructed its employees not to talk to opposing counsel, it is the eleventh hour in terms of trial preparation, the discovery cutoff is past, and, for some reason, the Plaintiff has now decided that it is imperative to talk to the nurses, who are now caught in the middle, and a protective order is necessary for the orderly administration of justice, which will both allow the defendant Medical Center to prepare its defense, while at the same time allowing the Plaintiff to develop her case.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that the Medical Center's Motion for Protective Order is granted, and the plaintiff may not have *ex parte* contacts with the nurses who attended to the physician and who may have negligently placed the sponges. However, to the extent that there are other nurses or employees who are not involved in the sponge placement process of this particular plaintiff, then the plaintiff is free to talk to such nurses outside the discovery process so long as traditional rules of patient confidentiality and the principles discussed in this order

are not transgressed. Given the limited time available, the time for the taking of depositions of the Medical Center's nurses is extended to June 15, 1994, and defense counsel are directed to accommodate the plaintiff's requests for depositions or informal interviews of these nurses in the presence of counsel, which may take place on the weekend, if necessary, in order for the Plaintiff to be ready for trial.