Betty ARMSEY, Plaintiff,

v.

MEDSHARES MANAGEMENT SERVICES, INC., et al.,
Defendants.

and

Harold Armsey, Plaintiff,

v.

Medshares Management Services, Inc., et al., Defendants.

and

Harold Armsey, et al., Plaintiffs,

v.

Preferred Choice Acquisition, Inc., et al., Defendants.

Nos. Civ.A. 97–039–B, Civ.A. 97–040–B, Civ.A. 97–051–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Nov. 16, 1998.

Ann K. Sullivan, Crenshaw, Ware & Martin, Norfolk, VA, Gerald L. Gray, Clintwood, VA, Roy M. Jessee, Mullins, Harris & Jessee, Norton, VA, for plaintiffs.

David E. Constine, III, Mays & Valentine, Robert L. Brooke, Richmond, VA, Michael L.

Shortridge, Shortridge & Shortridge, Norton, VA, for defendants.

## MEMORANDUM OPINION

SARGENT, United States Magistrate Judge.

These three cases previously have been consolidated for pre-trial discovery and for trial, which is set for March 29 and 30, 1999, in Big Stone Gap. These cases also previously have been referred to the undersigned magistrate judge for resolution of any discovery disputes. These cases are before the undersigned for decision on the Motion to Require Defendants To Produce Party Witnesses Within This Forum filed by Harold and Betty Armsey on October 27, 1998. (Docket Item No. 44.) These cases also are before the undersigned for decision based upon the objections of one of the corporate defendants to ex parte communications by plaintiffs' counsel with several of its former employees. (Docket Item No. 51.)

These three cases involve claims and counterclaims arising from the purchase of a home health care business by defendant Preferred Choice Acquisition, Inc., from Harold and Betty Armsey and Karen Lindsay, ("the Plaintiffs"), and the subsequent termination of the employment of Harold and Betty Armsey by the defendant Medshares Management Services, Inc., ("Medshares"). The facts are set forth in this opinion only to the extent necessary to address the issues currently before the court.

The Plaintiffs, by counsel, have informed the court that they wish to depose 21 current or former employees of Medshares. The Plaintiffs have moved the court to require that Medshares produce each of these individuals, many of whom live and work in the Memphis, Tennessee, area, for discovery depositions to be conducted in the Western District of Virginia. The Plaintiffs also have sought permission from the court to make informal ex parte contact with five former Medshares employees, Terry McDonough, Sherill Phelps, Bonnie Elosser, Diane Audas and Cheryl Palmer.

Medshares has objected to producing any employees who work and live in Memphis for

discovery depositions within the Western District of Virginia. Instead, Medshares contends that these depositions should be conducted at its place of business in Memphis. Medshares also objects to Plaintiffs' counsel making ex parte contact with these former employees.

With regard to the location of the depositions of Medshares' employees, the Plaintiffs contend that Medshares must produce these employees for depositions to be conducted in the Western District of Virginia because Medshares has filed a counterclaim in one of these cases, *Harold Armsey,* et al., *v. Preferred Choice Acquisition, Inc.,* et al., Civil Case No. 97–0051–B. In essence, the Plaintiffs contend that, by filing what the Plaintiffs characterize as a permissive counterclaim, Medshares has placed itself in the position of a plaintiff who has elected to file suit in this district. Thus, Medshares should be required to produce its employees for depositions within the district.

Medshares, on the other hand, contends that its counterclaim was compulsory. It also contends that the filing by a defendant of a compulsory counterclaim should not alter the general rule that the deposition of a corporation by its agents and officers should be taken at the corporation's principal place of business. *See Zuckert v. Berkliff Corp.,* 96 F.R.D. 161 (N.D.Ill.1982); *Fischer & Porter Co. v. Sheffield Corp.,* 31 F.R.D. 534 (D.Del. 1962).

■ The court's analysis of this issue must start by recognizing that, under the Federal Rules of Civil Procedure, this court has broad discretion to determine the appropriate location for a deposition and may attach conditions, such as the payment of expenses, as it finds appropriate. Fed.R.Civ.P. 26(b) and (c) and 30. *Resolution Trust Corp. v. Worldwide Ins. Management Corp.,* 147 F.R.D. 125, 127 (N.D.Tex.1992). There is an initial presumption that a defendant should be deposed in the district of his residence or principal place of business. *Turner v. Prudential Ins. Co. of America,* 119 F.R.D. 381, 383 (M.D.N.C.1988). Also, a deposition of a corporation through its agents or officers normally should be taken in the district of the corporation's principal place of business.

*Turner,* 119 F.R.D. at 383. Under the Federal Rules of Civil Procedure, however, there is a distinction between agents or officers of a corporate party, who may be compelled to attend a deposition based on notice only, and employees who are not officers, directors or managing agents of the corporate party and who must be served with a subpoena to compel their testimony. *Burns Bros. v. The B & O No. 177,* 21 F.R.D. 142 (E.D.N.Y. 1957).

■ A number of factors, however, may overcome the presumption and persuade a court to permit the deposition of a corporate agent or officer to be taken elsewhere. *Resolution Trust Corp.,* 147 F.R.D. at 127. These factors include location of counsel for the parties in the forum district, the number of corporate representatives a party is seeking to depose, the likelihood of significant discovery disputes arising which would necessitate resolution by the forum court; whether the persons sought to be deposed often engage in travel for business purposes; and the equities with regard to the nature of the claim and the parties' relationship. *Resolution Trust Corp.,* 147 F.R.D. at 127; *Turner,* 119 F.R.D. at 383.

■ Based on my consideration of these factors with regard to the facts presented in this case, I conclude that the depositions of Medshares' officers Stephen Winters, Paul Winters, William Lenehan and John Simmons should occur within the Western District of Virginia. As corporate officers of Medshares, it is likely that these individuals often engage in travel for business purposes, including travel to the Western District of Virginia to manage Medshares' Virginia offices and agencies. I note that Medshares apparently has offices located in the Western District of Virginia in Abingdon and Big Stone Gap. It also is likely that these corporate officers fully understood that doing business in the Western District of Virginia could subject themselves and other corporate representatives to judicial proceedings within the Western District. I also find that, regardless of whether Medshares' counterclaim is considered to be "compulsory" or "permissive," Medshares was not required to file this

counterclaim under Rule 13(a) of the Federal Rules of Civil Procedure because the claim was the subject of another action which had been pending in Accomac County, Virginia, Circuit Court since prior to the filing by the Plaintiffs of these cases. Fed.R.Civ.P. 13(a). By choosing to file the counterclaim in this district, I find that Medshares consciously chose to avail itself of the services of this court, much in the same way as a plaintiff would. Furthermore, based on the tone of this litigation to date, I regret that I must anticipate the likelihood of additional discovery disputes arising which would necessitate resolution by the forum court. Therefore, I hold that Medshares corporate officers should be made available for depositions in this district.

■ I do not, however, believe that the facts of this case warrant forcing any of Medshares current or former employees, who do not live or work in this district, to travel to this district to submit to depositions. Rather, I conclude that the depositions of any other current or former employees of Medshares should occur in the district in which each person resides.

Also, I am troubled by the fact that the Plaintiffs have submitted a list of 21 officers and current and former employees of Medshares whom they wish to depose. Rule 30 of the Federal Rules of Civil Procedure provides that a party must obtain either the agreement of the opposing party or leave of the court to conduct more than 10 depositions in a case. Fed.R.Civ.P. 30. Rule 26(b) allows the court to limit the number of depositions which may be conducted in a case if the court determines that the depositions may be cumulative or duplicative, that the information sought is available from other sources or that the burden of the deposition outweighs the likely benefits. Fed.R.Civ.P. 26(b). Therefore, pursuant to Rule 26(b), I will order that the Plaintiffs may schedule and conduct the discovery depositions of the four Medshares officers listed above. If, after these depositions are conducted, the Plaintiffs desire to depose additional current or former employees of Medshares, the Plaintiffs shall move the court to allow additional depositions. This motion shall inform the court of the specific need to depose each particular witness by listing the information sought from the witness and a statement as to whether this information is available from any other witness.

The Plaintiffs also have requested that their attorneys be allowed to make ex parte contact with five former employees of Medshares. These five individuals are Terri McDonough, a former in-house counsel; Sherill Phelps, a former Vice–President of Managed Care; and three former nonmanagement employees, Diane Audas, Cheryl Palmer and Bonnie Elosser. Medshares objects to any ex parte contact with its former management employees, McDonough and Phelps. Medshares also objects to any ex parte contact with its former nonmanagement employees, Audas, Palmer and Elosser, unless the court determines that none of the statements ever made by these former employees could be offered at trial as admissions of Medshares.[1]

■ Disciplinary Rule 7–103(A)(1) of the Virginia Code of Professional Responsibility provides:

> During the course of his representation of a client a lawyer shall not ... communicate or cause another to communicate on the subject of the representation with a *party* he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

(Emphasis added). When one of the parties is a corporation, this disciplinary rule prohibits ex parte communication with: (1) persons having managerial responsibility for the corporate party; (2) any other person whose act or omission in connection with that matter may be imputed to the corporate party for purposes of civil or criminal liability; or (3) any other person whose statement may constitute an admission on the part of the corpo-

---

**1.** Medshares also has noted an objection to Plaintiffs' counsel having ex parte contact with a sixth former employee, Rebecca Rogers. Plaintiffs, however, have not informed the court that they desire any ex parte contact with this former employee. *See* Letter from Gerald L. Gray to the court dated October 21, 1998, (Docket Item No. 42).

rate party. *Tucker v. Norfolk & Western Ry. Co.,* 849 F.Supp. 1096, 1098 (E.D.Va. 1994), quoting MODEL RULES OF PROFESSIONAL CONDUCT Rule 4.2 cmt. (1983) and ABA Comm. on Ethics and Professional Responsibility, Formal Op. 359 (1991); *Queensberry v. Norfolk & Western Ry. Co.,* 157 F.R.D. 21, 22 (E.D.Va.1993).

While this court utilizes the Code of Professional Responsibility as adopted by the Supreme Court of Virginia, *see* U.S. District Court for the Western District of Virginia Local Rules, Part 26, Rule IV of the Federal Rules for Disciplinary Enforcement, it must nevertheless "look to federal law in order to interpret and apply those rules" and should not "abdicate to the state's view of what constitutes professional conduct even in diversity cases." *McCallum v. CSX Transp., Inc.,* 149 F.R.D. 104, 108 (M.D.N.C.1993); *Polycast Technology Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621, 624–25 (S.D.N.Y.1990). Thus, the issue before the court is whether these former employees of Medshares should be considered represented "parties," who the Plaintiffs' attorneys should not contact ex parte.

Based upon my research and the representations of counsel in this case, it appears that this is an issue of first impression in Virginia. While state and federal courts in other jurisdictions have considered the issue, these courts have split on whether ex parte communications with the former employees of represented corporate parties is permissible. Some courts have held that, since a former employee can no longer speak for the corporation and, therefore, cannot make statements that could become vicarious admissions of the corporation, ex parte communication with former employees of a represented corporate party is permissible. *See, e.g., Wright by Wright v. Group Health Hosp.,* 103 Wash.2d 192, 691 P.2d 564, 569 (1984); *Niesig v. Team I,* 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030, 1032 (1990). Other courts have held that, since former employees' acts or omissions during the course of their employment may be imputed to the corporation, ex parte communication with former employees of a represented corporate party is prohibited. *See, e.g., Amarin Plastics, Inc. v. Maryland Cup Corp.,* 116 F.R.D. 36, 40 (D.Mass.1987); *Chancellor v. Boeing Co.,* 678 F.Supp. 250, 253 (D.Kan. 1988). Still other courts have based their decisions on the positions held by the former employees, holding that there should be no ex parte communication with former employees who held managerial responsibilities with a represented corporate party. *See, e.g., Rentclub, Inc. v. Transamerica Rental Finance Corp.,* 811 F.Supp. 651, 658 (M.D.Fla. 1992); *Porter v. Arco Metals Co.,* 642 F.Supp. 1116, 1118 (D.Mont.1986); *Camden v. State of Maryland,* 910 F.Supp. 1115, 1122 (D.Md.1996).

One of best discussions I found of the ethical considerations presented by such ex parte communications is contained in *Polycast Technology Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621. In this opinion, the court addressed not only the applicable ethical guidelines, but also addressed the policies reasons behind the ethical rules. *Polycast Technology Corp.,* 129 F.R.D. at 623–28. The court recognized that the general prohibition against an attorney having ex parte contact with a represented party is based on several rationales. *Id.* at 625. These rationales include preventing an attorney from circumventing opposing counsel to obtain unwise statements from an adversary party. *Id.* The court recognized that, under this rationale, a represented corporate party retained an interest in preventing an opposing attorney from eliciting uncounselled statements from its former employees, since such statements could affect the corporation's potential liability. *Id.* at 626.

■ The court in *Polycast Technology Corp.* found that this rationale did not justify preventing ex parte contact with the former employee at issue in that case. Nonetheless, I find that this rationale provides a compelling basis for prohibiting ex parte communications by the Plaintiffs' counsel in this case with these former employees of Medshares. I base my decision in large part on the fact that Plaintiffs' counsel has informed the court that they believe that each of these witnesses has knowledge or has made statements or has taken actions which should be imputed to Medshares. *See* Letter from Ger-

ald L. Gray to the court dated October 21, 1998, (Docket Item No. 42). In such a case, I see no need to craft a distinction in the governing ethical rules between current and former corporate employees. *See Branham v. Norfolk & Western Ry. Co.*, 151 F.R.D. 67, 69–70 (S.D.W.V.1993).

I should note that in reaching this decision I have considered Virginia Legal Ethics Opinion No. 1670, VIRGINIA LAWYER REGISTER, May 1996, at 34–35. Based on the facts presented in the hypothetical before the committee in that case, the committee opinion stated: "A corporation acts through its employees. However, once an employee ... separates from the corporate employer ..., the restrictions upon direct contact cease to exist because the former employee no longer speaks for the corporation or binds it by his or her acts or admissions." Virginia Legal Ethics Opinion No. 1670, VIRGINIA LAWYER REGISTER, May 1996, at 35. The Committee, however, also recognized that specific courts might reach a different conclusion based on the facts before them in any given case. *Id.* I find that the facts of this case justify a different conclusion.

I agree with the committee that former employees may no longer bind their corporate employer by their *current* statements, acts or omissions. Yet, this does not prevent liability being imposed upon their former employer based on the statements, acts or omissions of these individuals which occurred during the course of their employment. *See Precision Piping & Instruments, Inc. v. E.I. du Pont de Nemours & Co., et al.*, 951 F.2d 613, 619–20 (4th Cir.1991). In fact, Plaintiffs' counsel in this case has informed the court that it seeks to speak to each of these former employees because Plaintiffs believe that they can impute liability upon Medshares through the statements, actions or omissions of these former employees. Under these facts, I do not believe ex parte communications with these former employees is proper.

This opinion should not be interpreted as holding that any ex parte contact with any former employee of a represented corporate party is prohibited. This opinion does not attempt to address those cases where counsel may be seeking information from a former

employee whose actions or statements are not a subject of the litigation. *See Cole v. Appalachian Power Co.*, 903 F.Supp. 975, 979 (S.D.W.V.1995); *Chancellor*, 678 F.Supp. at 252; *Amarin Plastics*, 116 F.R.D. at 40.

 While ex parte interviews are not a method of discovery encompassed within Rule 26(c) of the Federal Rules of Civil Procedure, I hold that this court has authority to enter an order prohibiting such contact based on its inherent power to prohibit or remedy litigation practices which may raise or constitute ethical violations. *Chancellor*, 678 F.Supp. at 253; *Amarin Plastics*, 116 F.R.D. at 38–39.

An appropriate order shall be entered.