## CIRCUIT COURT OF LANCASTER COUNTY

Shirley L. Pruett,
Administrator c.t.a., et al.

v.

Virginia Health
Services, Inc., et al.

August 31, 2005

Case No. CL03-40

BY JUDGE HARRY T. TALIAFERRO, III

The defendant Virginia Health Services, Inc. ("VHS") has filed a motion for a protective order to bar the plaintiff and/or plaintiff's attorney from having *ex parte* communications with former employees of VHS and current employees who are not a part of the defendant corporation's "control group." Upon consideration of the oral arguments of counsel and the briefs submitted by each side, the Court denies in part and grants in part defendant's motion.

### Facts

This is a medical malpractice case. VHS owns, operates, and manages a nursing home in Lancaster County, Virginia. Plaintiff's decedent was a resident of defendant's nursing home from May 1, 2002, until her death on October 16, 2002. While in the nursing home, plaintiff's decedent's care was provided by nurses, CNAs, and other attendants who were defendant's employees. Plaintiff alleges that VHS breached the standard of care for nursing homes by not properly training, managing, and supervising its care staff and by failing to provide enough staff to sufficiently care for plaintiff's

decedent. Plaintiff's motion for judgment seeks damages for pain, suffering, and medical expenses caused by defendant's negligence and for the wrongful death of the plaintiff's decedent.

## Analysis

The issue before the Court is the extent of plaintiff's ability to have *ex parte* contact with persons having a former or present employment relationship with VHS and how such right may be affected by whether such persons are deemed to be within or without the corporate "control group" or may be regarded as the *alter ego* of the corporation. Such issue involves, on a case by case basis, analysis of the interplay between the rules of discovery and the ethical limitations governing *ex parte* contact with the opposing party and with persons represented by counsel. There is no controlling precedent in Virginia on this issue.

Defendant relies upon *DuPont v. Winchester Medical Center*, 34 Va. Cir. 105 (1994), and *Armsey v. MedShares Management Services, Inc.*, 184 F.R.D. 569 (1998). These cases contain analysis of the Virginia Code of Professional Responsibility (particularly former D.R. 7-103(A)(1)), Virginia Legal Ethics Opinions (including LEO No. 1670), the ABA Model Rules of Professional Conduct and the comments therein,[1] and Part Four of the Rules of the Supreme Court of Virginia (particularly Rule 4:1(c)).

*DuPont* was a medical malpractice suit alleging that a hospital and a treating physician negligently left surgical sponges inside the plaintiff. Hospital nurses were charged with failure to remove the sponges. Plaintiff's counsel sought *ex parte* contact with the nurses who were current employees of the hospital. The hospital instructed its nurses not to speak with the plaintiff. The Winchester Circuit Court granted the hospital's protective order prohibiting the plaintiff from having *ex parte* contact with the nurses who attended the physician and who may have negligently placed the sponges.

There were specific facts cited by the court in *DuPont* as the reason for denying *ex parte* contact. The plaintiff made her motion in the "11th hour" after the cutoff of discovery arguing an imperative need to have *ex parte* contact. The nurses were caught in the middle. Citing their protection, the court ruled out all *ex parte* contact with the nurses regarding any issue of liability relating to the

---

[1] A modified version of the ABA Model Rules and comments entitled "Virginia Rules of Professional Conduct" ("RPC") was adopted effective January 1, 2000, replacing the Virginia Code of Professional Responsibility.

sponges, while finding that *ex parte* communication was not improper if plaintiff's counsel limited inquiry with the nurses to subject matter not relating to the negligent acts alleged in the suit.

The *DuPont* court in considering conflicting lines of analysis regarding *ex parte* contact correctly noted that the rules of discovery and rules of ethics are not coterminous. It considered *UpJohn v. United States*, 449 U.S. 383, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981) (any employee who might bind the corporation by their acts or admissions only to be contacted by the opposing side through formal discovery), and a string of non-binding LEOs (all but one of which were after *UpJohn*) all opining it permissible for an attorney to directly contact and communicate with employees of an adverse party provided that the employees were not members of the corporation's "control group" and were not able to commit the corporation to specific courses of action that would lead one to believe the employee is the corporation's *alter ego*.

DR 7-103(A)(1) in effect at the time *DuPont* was decided is substantially similar to Virginia's current RPC 4.2 adopted in 2000.[2] Citing this similarity, *DuPont* utilized an official comment to ABA Model Rule 4.2 to interpret DR 7-103(A)(1). The comment, set out in *DuPont*, is as follows:

> In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the corporation, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

*DuPont* considered the nurse employees who acted on behalf of the corporation as not functionally different from "control group" employees who have authority to make binding decisions on behalf of the corporation. *DuPont* approved reasoning from *Queensberry v. Norfolk & Western Ry.*, Civil Action No. 3:93CV163 (E.D. Va. 1963), finding that corporate employees who are alleged to act negligently or who can make binding corporate decisions are all acting as the corporation and are in essence its *alter ego*. *DuPont*'s conclusion was that, since a corporation can only act through its "surrogates," it should not

---

[2] This similarity to the then ABA Model Rule 4.2 was noted in the *DuPont* case. The "Virginia Code Comparison" comment under Virginia's RPC 4.2 also notes the two rules are "substantially the same."

have less protection than a natural person; therefore, the better rule was the above cited comment to ABA Model Rule 4.2. When Virginia adopted its Rules of Professional Conduct in 2000, the comment cited in *DuPont* was not included.

While *DuPont* dealt exclusively with current corporate employees, *Armsey* involved only former employees. Plaintiff's counsel desired *ex parte* contact with the defendant corporation's (1) former in-house counsel, (2) former vice president of managed care, and (3) three former non-management employees.

The corporate defendant in *Armsey* sought to block *ex parte* contact with former management employees because they were part of the "control group" and with non-management employees because the plaintiff admittedly was seeking employee statements to offer at trial as corporate admissions. While it considered both DR 7-103(A)(1) and Model Rule 4.2, *Armsey* noted that federal courts would look to federal law to interpret and apply Virginia's rules of ethics. The opinion discussed the split of opinion among different courts regarding what constituted permissible *ex parte* contact with opposing party corporate personnel:

> Some courts hold *ex parte* contact with former employees to be permissible on the ground that former employees could no longer speak for the corporation[3] and, therefore, what they told opposing counsel could not be used as vicarious admissions of the corporation.

> Other courts hold that *ex parte* communication with former employees is prohibited because such employees' present statements to opposing counsel of acts or omissions done in the course of their former employment could be imputed as corporation admissions.

> Still other courts used a position analysis to hold that former managerial ("control group") employees could not be contacted *ex parte* by opposing counsel.

*Armsey* addressed the ethical policy rationale behind prohibited *ex parte* contact including the "retained . . . interest" of a represented corporate party from having opposing counsel obtain "uncounselled" or "unwise" statements

---

[3] *See* Comment [4] of RPC 4.2 "the prohibition [against *ex parte* contact] does not apply to former employees . . . of the [corporation], and an attorney may communicate *ex parte* with such former employee . . . even if he or she was a member of the [corporation's] "control group."

from former employees which could affect the corporation's potential liability. The Court found that plaintiff's counsel desired *ex parte* contact with former employees in order to impute their knowledge, actions or statements to their former corporate employer.

Non-binding Virginia LEO 1670 (1996) opined that restrictions on *ex parte* contact cease to exist for a former employee because former employees can no longer speak for or bind the corporation by their acts or omissions. LEO 1670 noted, however, that different conclusions could be reached in different cases based on the facts. *Armsey* concurred that former employees cannot bind their former corporate employer by their current statements, but noted they could cause liability to be imputed to the employer based on statements, acts, or omissions which occurred during the course of their employment. *Armsey* thus held plaintiff's counsel could not have *ex parte* contact with former employees concerning the subject matter of their actions which occurred during their employment at the time of the event allegedly giving rise to the plaintiff's claim of liability.

Under the particular facts in our case, we do not find plaintiff's counsel's action occurring in the eleventh hour after the expiration of the deadline for discovery. The case is currently set for trial on March 28, 2006. The plaintiff proposes *ex parte* contact with former control group and non-control group employees (the group in *Armsey*) and currently employed nurses, CNAs, and care providers (the group in *DuPont*), who are not control group employees. When Virginia adopted RPC 4.2 it excluded the Model Rule 4.2 comment relied upon in *DuPont*. RPC 4.2 contains no comment which would red flag an ethical bar to plaintiff's counsel's *ex parte* contact with any former or current employees of VHS other than current "control group" employees or persons fitting the *alter ego* analysis.

Concern exists about preserving the confidentiality of any attorney-client privilege particularly where the person who is contacted *ex parte* has retained personal counsel.

Comment 4 to RPC 4.2 suggests the adoption of the primary logic employed in LEO 1670. It would prohibit *ex parte* communications with persons in VHS's "control group" defined as "any employee of an organization who, because of their status or position, have the authority to bind the corporation." We find such persons to be managerial employees, not floor nurses, CNAs, or other direct care providers

Comment 4 to RPC 4.2, however, also would prohibit *ex parte* contact with persons who may be regarded as the "*alter ego*" of the corporation. Such persons may be those who act on behalf of the corporation performing the work to which they are assigned. The rationale is that only through such "hands on"

interaction with residents of the nursing home does the corporation carry out its purposes. Like in *DuPont*, VHS's current employees are in the middle. They are answerable within the scope of their employment to their employer. By contrast, former employees are not answerable to the corporation and, thus, are not under its control or authority.

Plaintiff's counsel stated to the Court he was passionate about fighting neglect and abuse of residents by nursing homes charged with their care. As Mr. Turner put it, they are killing people and making a lot of money doing it. It is harmless to say this to the Court in a motion hearing because we disregard the comment in our considerations. If stated to a jury, a motion for a mistrial would be a virtual certainty. Such statement to a current employee is unnerving.

We do not diminish the role of civil litigation in correcting societal wrongs. This effect normally occurs, however, after a verdict not during the course of litigation. We shrink not one inch from a lawyer's ethical responsibility to zealously represent his client. Political causes have their place, but, in the Lancaster County Circuit Court, we deal with one resident against one nursing home. As this Court sees it, plaintiff's counsel's *ex parte* contact with currently employed nurses, CNAs, and care giving employees creates significant potential for disrupting the current operation of the defendant's facility. With respect to current employees, we believe a more controlled process of discovery under the rules of court would better serve the administration of justice in this case.

## Conclusion

Courts have great flexibility in entering protective orders under Virginia Supreme Court Rule 4:1(c). Subject to the conditions stated below, defendant's motion is denied insofar as it seeks to bar *ex parte* contact with: (1) former "control group" employees. (No longer employed by VHS.) (2) former non control group employees. (No longer employed by VHS.)

Also, subject to the conditions stated below, defendant's motion is granted insofar as it seeks to bar *ex parte* contact with: (3) current "control group" employees of VHS. (Presently employed by VHS.) (4) current non "control group" employees who provide resident care. (Presently employed by VHS.)

Plaintiff's counsel may, however, have *ex parte* contact with those employees identified in (3) and (4) above on matters which do not relate to the acts or omissions alleged to have caused injury, damage, or death to plaintiff's decedent.

Plaintiff's counsel may not contact any current or former employee of defendant who has retained independent counsel with respect to the matters in issue in this suit without first obtaining such counsel's consent to speak with his or her client.

In contacting any former employee identified in paragraphs (1) and (2) above, plaintiff's counsel must first advise any such person that he represents a party suing VHS, determine whether such former employee is represented by independent counsel, and, if so, obtain consent of such counsel before talking to the former employee, and advise such person that he or she is not his client. Plaintiff's counsel shall not give advice to such persons, except to advise that they may wish to obtain a lawyer.

Mr. Pace shall draft a protective order pursuant to Rule 4:1(c) in accordance with the ruling as expressed in this letter.